DAVIS et al. v. UNITED STATES (two cases).

(Circuit Court of Appeals, Sixth Circuit. October 2, 1900.)

Nos. 810, 811.

COMMERCE—OFFENSES AGAINST INTERSTATE COMMERCE LAW—PLACE OF COMMISSION.

Section 10, par. 3, of the interstate commerce law (1 Supp. Rev. St. p. 687), makes it a misdemeanor for any person, for himself, or as officer or agent of any corporation or company, who shall deliver property for transportation to any common carrier, subject to the provisions of the act, or for whom as consignor or consignee any such carrier shall transport property, to obtain transportation for such property at less than the regular rates, by means of false billing, classification, or weighing, or false representation of the contents of the package, etc., and provides for the prosecution of the offense in any court of the United States of competent jurisdiction "within the district in which such offense was committed." *Held*, that such offense is not one which requires the transportation of the property to its destination before it is complete, and which may therefore, under Rev. St. § 731, be prosecuted either in the district where the shipment is made or in that where it terminates, but that the gist of the offense is the fraudulent act by means of which the lower rate is obtained, and the offense is complete where such act has been committed, the property delivered for transportation, and the contract for the illegal rate secured, and can only be prosecuted in that district.

Appeals from the Circuit Court of the United States for the Southern District of Ohio.

These cases are of a similar nature, and will be considered together. They involve the right to issue a warrant under the Revised Statutes of the United States (section 1014) for the purpose of removing appellants from the Southern district of Ohio to the Northern district of Texas for trial under certain indictments alleging violation of section 10, par. 3, of the act to regulate commerce (1 Supp. Rev. St. p. 687). The one case is an appeal from an order made in the district court of the United States for the Southern district of Ohio, directing the removal of the appellants for trial to the Northern district of Texas. The other is a proceeding in habeas corpus, whereby the appellants sought to be discharged from custody under said order, which was refused. Appellants were indicted in the district court of the United States for the Northern district of Texas. The indictment contains two counts. The first charges, in substance, that the appellants, under the name of the Ault Woodenware Company, of the city of Cincinnati, county of Hamilton, and state of Ohio, did, on or about March 15, 1899, deliver woodenware of the weight of 15,000

pounds, tin sifters of the weight of 750 pounds, also tin sieves of the weight of 124 pounds, for continuous carriage and shipment from Cincinnati to Dallas, Tex., by certain carriers, who did then and there carry and transport the said woodenware, tin sifters, and tin sieves from Cincinnati to Dallas, over the route formed by them, the carriers being subject to the said act; said goods were then and there delivered to the carriers, and the defendants then and there, by the false and fraudulent representation of same unto said carriers, and by then and there falsely reporting same as being 15,000 pounds of woodenware, whereas, in truth, they, at the time of delivery, well knew that the merchandise consisted of three kinds above mentioned; that the defendants, by means of such billing, false and fraudulent representations, and false reporting of the property as aforesaid, in violation of the act of congress and the several supplements and amendments thereof, obtained transportation for the same at less than the regular freight rates then duly established under the said act to regulate commerce, then legally in force, for said continuous carriage and shipment. The second count recites the freight rates established for the different kinds of merchandise, but contains the same averments as to appellants being of Cincinnati, Ohio, and charges the offense in the same terms as then and there committed. It also charges the delivery of the goods by the carriers at Dallas, as well as their transportation over said route, whereby the appellants, in the county of Dallas, state of Texas, were then and there, in the manner aforesaid, guilty of violation of said acts. In the bill of exceptions it is agreed that appellants are and have continuously been residents of Ohio, residing and doing business at Cincinnati, and that everything connected with the shipment of the goods mentioned, except the carriage and delivery, took place in the city of Cincinnati, state of Ohio.

Judson Harmon and Phillip Roettinger, for appellants.

William E. Bundy, for the United States.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after stating the foregoing facts, delivered the opinion of the court.

The question presented is, was such a charge and showing made of the commission of an offense against the laws of the United States in the Northern district of Texas as to warrant an order directing the appellants to be taken to that district for trial? The statute under cover of which the indictment is drawn reads as follows:

"Any person and any officer or agent of any corporation or company who shall deliver property for transportation to any common carrier subject to the provisions of this act, or for whom, as consignor or consignee, any such carrier shall transport property, who shall knowingly and willfully, by false billing, false classification, false weighing, false representation of the contents of the package, or false report of weight, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent or agents, obtain transportation for such property at less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is hereby declared to be a misdemeanor, and shall, upon conviction thereof in any court of the United States of competent jurisdiction within the district in which such offense was committed, be subject for each offense to a fine not exceeding $5,000, or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court."

This act undertakes to define the crime, and provide for the punishment of certain persons who shall, by means of the fraudulent practices described in the act, obtain transportation for property at less than the regular rates. The act defines certain classes of persons who are amenable to its provisions, and they are: (1) Any person,

officer, or agent of any corporation or company who shall deliver property for transportation; (2) any person, officer, or agent of any corporation or company for whom, as consignor or consignee, any such carrier shall transport property. If either of these classes of persons shall knowingly and willfully, by false billing, etc., obtain transportation for such property at less than the regular rates, they shall be deemed guilty of fraud.

The acts charged against the appellants in both counts are misrepresentations by false billing and classification of the property described, delivered by them to the railroad company at Cincinnati for transportation from that city to the city of Dallas, Tex., by which means transportation between said cites was obtained at less than the regular established rates. It is apparent from the reading of the act that the object thereof is to prevent shippers from obtaining undue advantage by procuring transportation for their property over interstate lines at less than the regular rates which are charged others similarly engaged. The shipper is to be punished whether he acts with or without the consent or connivance of the carrier or its agents. The reading of the indictment, as well as the fact stated in the bill of exceptions, shows that the acts alleged to have been committed by appellants were all done and performed in the city of Cincinnati, in the Southern district of Ohio. The false representation of the character of the goods, the delivery for transportation, and every act directly alleged to have been done by appellants took place in that jurisdiction. It is claimed on the part of the government that, while this may be true, the crime was not completed in the Southern district of Ohio, but that it required transportation of the goods, and that the term "transportation" is to be taken, in its ordinary signification, as meaning the carriage of the goods, and that this carriage was not completed until the goods reached their destination at Dallas; that, therefore, the offense would be committed only when this transportation beyond state lines is completed; and the case then comes within the provisions of section 731 of the Revised Statutes of the United States, which provides:

"When any offense against the United States is begun in one judicial circuit and completed in another, it shall be deemed to have been committed in either, and may be dealt with, inquired of, tried, determined or punished in either district, in the same manner as if it had been actually and wholly committed therein."

This section was intended to provide for that class of cases where the crime is not completed in one district, but a separate and distinct act of commission essential to the crime is committed in another district, in which case the statute provides that prosecution may be had in either district. That class of cases is illustrated in the case of In re Palliser, 136 U. S. 257, 10 Sup. Ct. 1034, 35 L. Ed. 514, in which the offense charged was an offer of money contained in a letter mailed in New York and addressed to a postmaster in Connecticut, and where the supreme court held that the offense continued to be committed in Connecticut. It was there that the act of the accused operated upon the mind of the postmaster. There it was that he received the proposal, and the criminal act became effective. Horner

v. U. S., 143 U. S. 207, 12 Sup. Ct. 522, 36 L. Ed. 126, is of the same nature; the offense being delivery of mail containing lottery circulars. The delivery actually occurred in Illinois, to which state the circular had been mailed. The offense was held to be triable there. In order to sustain the government's contention, it is apparent it must be held that only after the transportation of the goods to their destination is the crime complete. In other words, that part only of the offense has been committed in the district where the participants in the offense were at the time when their acts of fraud and misrepresentation were committed.

This brings us to consider what is the nature of the offense and where does it become complete. The thing aimed at in this section of the act is to prevent undue advantage which will accrue to a shipper who obtains lowered rates by means of false classification, billing, etc. This rate is manifestly obtained where the goods are billed by the carrier for transportation. It is not the transportation of the goods which is prohibited and punished, but the obtaining of the transportation by means of false and fraudulent conduct, which is the gist of the offense. What is it, then, to obtain transportation in the sense of this statute? We think that false billing or other misrepresentation of the goods, as stated in the act, which results in their being received by the carrier under a contract of carriage thus fraudulently obtained, is the obtaining of transportation within the meaning of the statute. Then the fraudulent conduct of the shipper has borne its fruit, and every act and intent which constitutes the offense is complete. It is urged that transportation of the goods to the full measure contracted for is necessary to constitute the crime. This argument ignores the fact that the punishment is not so much on account of the transportation as for the wrongful conduct which has obtained it. Ordinarily, a delivery to the carrier is a delivery to the consignee. Every act which the consignor can do about the goods, all representations which he can make concerning them, the weight and classification thereof, are complete, and the goods turned over to the carrier for the consignee. Then the crime has been accomplished which the statute seeks to punish, namely, obtaining by the shipper of transportation at rates which others in a similar business, who pay the regular rates, do not secure. If the transportation must be to the point of destination, then an unforeseen accident, which might prevent the carrying of the goods through, would condone the offense, although the accused had committed every act and obtained everything the statute requires in order to make out the offense. If such is the transportation contemplated in the act, then the discovery of the fraud by the carrier, after carriage partially completed, with consequent refusal to take the goods to their destination, will render the crime incomplete. If the goods are accidentally lost, is the crime any the less committed when all the acts of the accused, with the intent and purpose to defraud, have concurred to complete the offense? We do not think such was the intent and purpose of congress in enacting this law. Its purpose was to reach and punish the person guilty of the things named in the statute who should thereby obtain transportation for his goods. This conclusion is in harmony

with the provision of the statute which requires that the person guilty of such fraud shall, upon conviction thereof, in any court of the United States of competent jurisdiction within the district in which such offense was committed, be subject to a fine and imprisonment. This provision shows the intention of congress to punish a crime which is committed in a district wherein jurisdiction is given for its punishment. In passing this act congress was regulating interstate commerce. It had power to legislate upon this subject only on interstate lines, and, recognizing this, it is set forth in the act that its provision shall not apply to transportation of passengers or property wholly within one state, and not shipped to or from a foreign country, state, or district. Such transportation may be through a number of districts, but congress has given jurisdiction for punishment of the crime in the district in which the offense is committed. It must have been in the contemplation of congress that the fraudulent representations may be made in one place, and the transportation, in the sense of actual carriage, obtained as a result thereof, may be to a state or district remote from the place of delivery, and through a number of districts of the United States. If it was contemplated that the crime could only be committed when the carriage contracted for was concluded, quite a different provision would have been inserted than the one requiring punishment in the district where committed. Congress, in passing this act, and providing for the place of trial and punishment in a single district, evidently contemplated the consummation of the offense at the place where the goods are billed by the shipper and the delivery for transportation takes place. It is said this part of the statute providing for the place of trial is nothing more than an enactment of the constitutional provision which requires that in criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury in the district where the crime was committed. We are unable to see the purpose which congress could have had in thus undertaking to re-enact this constitutional provision. Nothing can be added to the force of the statute by repeating a provision which no statute can ignore, and a constitutional requirement with which congress must be assumed to have been familiar. If the construction of this statute can be regarded as doubtful,—and eminent judges in this circuit have reached different conclusions concerning it,—we should strongly incline to that interpretation which is in harmony with the common law and constitutional requirements deemed essential to the rights of persons accused of crime. This construction is in harmony with the common law, wherein it was required that the jury should be from the vicinage, and with the constitutional requirement that trial shall be by jury and in the state where the crime shall have been committed. True, this constitutional provision only undertakes to secure the right of trial where the crime has been committed, and, if the offense in this case has been committed in the remote district to which the goods were transported, then no constitutional right is infringed by requiring the offenders to be tried in such district. We think it entitled to weight, however, in construing this statute, that the interpretation here given

provides for a trial at the scene where the criminal acts were committed, where the witnesses must necessarily live, where the accused can be tried without removal to great distances, and where good character may benefit the accused. If the carriage of the goods was the thing aimed at in this statute, and such was to have been deemed fraudulent per se, the crime might be regarded as a continuing one. As we have already said, it is the obtaining of the transportation by the acts denounced in the statute which is the gist of the offense. Other cases of offenses commenced in one district and completed in another are referred to by counsel, but they do not seem to us to assist in the determination of the case at bar.

For the reasons herein stated, we think the offense charged was committed within the Southern district of Ohio, and that the learned court erred in ordering the appellants into custody of the marshal to be transported to the Northern district of Texas, and in refusing to discharge the appellants in the proceeding in habeas corpus. Both judgments will be reversed, and the appellants discharged from further custody.