**UNITED STATES v. WISHNATZKI et al.**

No. 322.

Circuit Court of Appeals, Second Circuit.

May 13, 1935.

L. HAND, Circuit Judge, dissenting.

**358**

Henry Silverman, of New York City (David Haar, of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., Francis W. H. Adams, Chief Asst. U. S. Atty., and George R. Pfann, Asst. U. S. Atty., all of New York City (Richard J. Burke, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Burt L. Smelker, of Washington, D. C., for Interstate Commerce Commission.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The defendants were indicted for a violation of the Interstate Commerce Act (49 USCA § 10 (3), and were tried by court after a jury had been waived. See Patton v. United States, 281 U. S. 276, 50 S. Ct. 253, 74 L. Ed. 854, 70 A. L. R. 263. The government having elected to stand on the eleventh count in the indictment, the other counts were dismissed on its own motion. Defendant Sroge alone was convicted and has appealed.

Count 11 charged the defendants with knowingly and willfully filing a false claim against the Pennsylvania Railroad Company for damage to a' carload of tomatoes, shipped from Selmer, Tenn., to defendants Wishnatzi and Nathel as consignees at Jersey City, N. J., whereby the compensation for the carriage of the tomatoes in interstate commerce was made less to the carrier than the regular rate established and in force at the time for such transportation.

Of the 660 lugs of tomatoes in the carload, 313 lugs were damaged on arrival at Jersey City. It was customary in such cases for the consignee to sell in that market the undamaged tomatoes in the car and to file a claim for the damaged lugs on the basis of the weighted average sale price of the lugs sold. When such a claim was filed the sale price given was treated as sufficient proof of the actual value of the damaged property. Unless held for investigation because the price stated was out of line with the reported market price of similar goods on the day named, the claim was paid by the railroad as a matter of routine.

On August 12, 1930, a claim for $888.92 was made up, certified, and presented to the railroad by the appellant, a bookkeeper employed by the consignees, who were the defendants who have been acquitted. It showed that 128 of the undamaged lugs were sold at $3 and 219 of them at $2.75, making the weighted average sale price $2.84 per lug. As the market price of tomatoes on July 19, 1930, the day these lugs had been sold, had gone to $3 per lug, the claim was not questioned and was paid in due course.

In January and February, 1932, two special agents employed by the government made an investigation of the records of Wishnatzki and Nathel. They were assisted by the appellant, who told them that he made up the claim from salesman's slips pinned to the car file and presented to him; that such slips were not kept, but that the sales tickets had been preserved and were the only records available. An unsuccessful search was made for sales tickets which showed sales of tomatoes at $3 per lug on July 19, 1930. There was no other explanation of the manner in which the claim was made up and no other proof either that it was false or that the appellant knew it to be false when he certified it.

■ The statute (49 USCA § 10 (3) upon which count 11 was based appears in the margin.* The appellant insists that it does

* (3) Obtaining lower rates by false billing, etc., or by false claim; penalty. Any person, corporation, or company, or any agent or officer thereof, who shall deliver property for transportation to any common carrier subject to the provisions of this chapter, or for whom, as consignor or consignee, any such carrier shall transport property, who shall knowingly and willfully, directly, or indirectly, himself or by employee, agent, officer, or otherwise, by false billing, false classification, false weighing, false representation of the contents of the package or the substance of the property, false report of weight, false statement, or by any other device or means, whether with or without the consent or connivance of the carrier, its agent, or officer, obtain or attempt to obtain transportation for such property at less than the regular rates then established and in force on the line of transportation; or who shall knowingly and willfully, directly or indirectly, himself or by employee, agent, officer, or otherwise, by false statement or representation as to cost, value, nature, or extent of injury, or by the use of any false bill, bill of lading, receipt, voucher, roll, account, claim, certificate, affidavit, or deposition, knowing the same to be false, fictitious, or fraudulent, or to contain any false, fictitious, or fraudulent statement or entry, obtain or attempt to obtain any allowance, refund, or payment for damage or otherwise in connection with or growing out of the transportation

not apply to him, an agent of the consignees. It must be confessed that the meaning of the language used is somewhat blurred by the arrangement of words. Yet in the light of the obvious intent of Congress to prevent consignors, carriers, and consignees knowingly and willfully using false claims to make the compensation of a carrier for interstate transportation less than the regular rates established and in force at the time, we think the statute must be construed to cover the agent of a consignee. The general purpose of the statute is well known. Compare Louisville & N. R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671; Arizona Grocery Co. v. Atchison, T. & S. Fé Ry. Co., 284 U. S. 370, 52 S. Ct. 183, 76 L. Ed. 348. The strict construction which must be given a penal statute neither requires nor permits such a narrow meaning being attributed to the language used that the purpose of the law will be thwarted. On the contrary, an interpretation consonant with that purpose is to be attained whenever the words used may fairly be so read. United States v. Union Supply Co., 215 U. S. 50, 30 S. Ct. 15, 54 L. Ed. 87; United States v. Corbett, 215 U. S. 233, 30 S. Ct. 81, 54 L. Ed. 173.

Deleting words not presently material, the controlling part of the statute reads: "Any person, corporation, or company, or any agent or officer thereof * * * for whom, as * * * consignee, any such carrier shall transport property, who shall knowingly and willfully, directly, or indirectly, himself or by employee, agent, officer, or otherwise" do what is prohibited shall be guilty of a misdemeanor. Unless one is willing to arrive at the far-fetched conclusion that Congress intended to put agents or officers of others into a separate and distinct class to which the statute applied only when they were themselves consignees as well as agents or officers, the statute must, in so far as it relates to consignees, be taken to mean that any person, corporation, or company who is a consignee, or any agent or officer of such consignee, who does what

is made unlawful, is guilty of a misdemeanor. That is what, in our judgment, the statute does mean.

A second point relied upon by the appellant is that the proof fails to show that the filing and payment of the claim resulted in making the compensation of the carrier less than the regular established rate. This is based upon the fact that tomatoes did sell in that market at $3 per lug on July 19, 1930. From this it is argued that the claim paid was no greater than the consignees were entitled to receive upon a correct application of the law of damages giving them the benefit of the market price. See The Ansaldo San Giorgio I, 73 F.(2d) 40 (C. C. A. 2). What the consignees might have proved as their damages had the claim been contested is now immaterial. The payment of the claim certified by the appellant did reduce the compensation of the carrier for transportation below what it received at the regular established rates. A rate which can only be "established" by computation after deducting lawfully made and paid damage claims from compensation received under the rate schedules filed and published under the authority of the Interstate Commerce Commission is not a regular rate established and in force on the line of transportation. It is, indeed, difficult to find an example of a rate, assuming that such a thing can be called a rate, more irregular and uncertain. It would vary both with the fact and the amount of damage. No one could tell in advance what such a rate would be. The payment of the claim served to establish no rate, but did reduce the compensation below the established rate referred to in the statute.

The remaining part of this appeal has to do with whether or not the government introduced any substantial proof that the appellant knowingly and willfully certified a false claim.

The proof as to that must be found in the evidence given by the two special agents of the Interstate Commerce

of or agreement to transport such property, whether with or without the consent or connivance of the carrier, whereby the compensation of such carrier for such transportation, either before or after payment, shall in fact be made less than the regular rates then established and in force on the line of transportation, shall be deemed guilty of fraud, which is declared to be a misdemeanor, and shall, upon con-

viction thereof in any court of the United States of competent jurisdiction within the district in which such offense was wholly or in part committed, be subject for each offense to a fine of not exceeding $5,000 or imprisonment in the penitentiary for a term of not exceeding two years, or both, in the discretion of the court: Provided, That the penalty of imprisonment shall not apply to artificial persons.

Commission who, during part of January and February, 1932, made the investigation in the office of Wishnatzki and Nathel to determine whether this claim and others were in accord with records there. They learned from the appellant that he made up the claim from slips made out by the salesmen and pinned to the car file when that was taken to the office. Such slips showed the number of the car from which the tomatoes had been sold, but they were not kept as permanent records, however. The only records available at the time of the investigation were sales tickets found in a box in the office attic. Though such sales tickets did not show the cars from which the tomatoes were sold, it was customary to put all the sales tickets for one day into one envelope. Many of these were found in the box in the attic including one containing sales tickets for July 19, 1930. From the sales tickets found in this envelope it was learned that Wishnatzki & Nathel sold 1,092 lugs of tomatoes that day at prices ranging from $1 to $2.75 per lug. No ticket for 128 lugs sold at $3 was found; nor was there anything to indicate whether any part of the 1092 lugs so shown to have been sold that day was from the damaged carload. The government proved that the agents could find no records to support the claim filed. Since no evidence whatever was introduced by any of the defendants, the credibility of witnesses is not involved. The question is whether the uncontradicted evidence of the government showing that the appellant certified the claim and was unable some two years later to produce the slips from which he said he got his information or to produce any corresponding sales tickets is evidence that the appellant was guilty as charged. There was no evidence to show that the salesmen did not turn in slips attached to the car file. There was no evidence that such slips were not customarily used in making out such claims as this. There was nothing, in short, upon which to find this appellant guilty beyond a reasonable doubt of knowingly and willfully certifying a false claim except suspicion engendered by his failure to produce supporting records. Were the burden on the appellant to justify his conduct, the result below could be sustained, but, of course, the appellant was presumed to be innocent until evidence was introduced by the government sufficient to show beyond a reasonable doubt that he was guilty. In this instance it had to be sufficient to show beyond a reasonable doubt that he knowingly and willfully certified a false claim which had the effect the statute was designed to prevent. So tested, we cannot believe that there is any evidence to support the judgment. It is as reasonable to believe that this bookkeeper, who had no pecuniary interest in the claim at all, acted honestly, though perhaps mistakenly in reliance upon salesman's slips which he neglected to compare for verification with the sales tickets for the day, as that he acted with the dishonesty which is a substantive part of the offense under the statute and which the law makes it necessary for the government to prove beyond a reasonable doubt. Since this is so, there was no evidence to support the conviction. We are bound to notice such an error and correct it. Wiborg v. United States, 163 U. S. 632, 658, 16 S. Ct. 1127, 1197, 41 L. Ed. 289; Clyatt v. United States, 197 U. S. 207, 25 S. Ct. 429, 49 L. Ed. 726.

Judgment reversed.

L. HAND, Circuit Judge (dissenting).

I agree with the opinion of the court in all respects, except that I think that there was evidence of the defendant's guilt. Therefore in my judgment the conviction should be affirmed.