**UNITED STATES OF AMERICA**

v.

**EASTERN AIR LINES, INC.**
No. 11532–M–Cr.

United States District Court
S. D. Florida,
Miami Division.
Feb. 23, 1961.

E. Coleman Madsen, U. S. Atty., by Robert W. Rust, Asst. U. S. Atty., Miami, Fla., for Government.

Gambrell, Harlan, Russell, Moye & Richardson, by Harold L. Russell, Atlanta, Ga., for defendant.

John B. Drury, Enforcement Atty., Civil Aeronautics Bd., Washington, D. C.

RAO, Judge (Judge of the United States Customs Court sitting by designation as United States District Judge).

Defendant is charged in an information presently comprising sixteen counts [1] of violating the provisions of an Order of the Civil Aeronautics Board (Order E–11560) adopted July 11, 1957, wherein it was directed to "cease and desist from advertising, or in any manner representing to the public, that it offers 'lowest fares' between two points so long as any other air carrier offers the same or lower fares between the same points."

Such violation, if established, is declared to be a misdemeanor by the terms of § 902(a) of the Federal Aviation Act of 1958 (49 U.S.C.A. § 1472) which provides as follows:

"§ 1472.    Criminal penalties— Generally

"(a) Any person who knowingly and willfully violates any provisions of this chapter (except subchapters III, V, VI, VII, and XII of this chapter), or any order, rule, or regulation issued under any such provision or any term, condition, or limitation of any certificate or permit issued under subchapter IV of this chapter, for which no penalty is otherwise herein provided, shall be deemed guilty of a misdemeanor and upon conviction thereof shall be subject for the first offense to a fine of not more than $500, and for any subsequent offense to a fine of not more than $2,000.    If such violation is a continuing one, each day of such violation shall constitute a separate offense."

§ 1007(b) of the Federal Aviation Act of 1958, as amended (49 U.S.C.A. § 1487) empowers the Civil Aeronautics Board to request prosecution under said § 902(a), venue being laid by the provisions of § 903 of said act (49 U.S.C.A. §§ 1473) in the district in which such offense is committed.    It is further provided in said § 903 that "whenever the offense is begun in one jurisdiction and completed in another it may be * * * tried, determined, and punished in either jurisdiction in the same manner as if the offense had been actually and wholly committed therein."

The parties have cooperated to present to the Court—trial by jury and special findings of fact having been expressly waived—the full facts and circumstances giving rise to this action.    An agreed statement of facts reveals that defendant Eastern Air Lines, Inc. (hereinafter called Eastern) was party to a proceeding before the Civil Aeronautics Board instituted on September 5, 1956, by Delta Air Lines, Inc., in which it was charged

---

[1]. Six counts of the original information filed February 19, 1960, were dismissed by order of United States District Judge Emett C. Choate, August 19, 1960.

that Eastern had engaged in unfair and deceptive practices and unfair methods of competition within the meaning of Section 411 of the Civil Aeronautics Act of 1938 as amended, (now Section 411 of the Federal Aviation Act of 1958, 49 U.S.C.A. § 1381), by "holding out in advertisements that its fares were the 'lowest' and its scheduled flight times were the 'fastest,' whereas it was alleged that in fact another air carrier offered identical fares and identical scheduled flight times for air transportation between certain points involved served by Eastern."

After conferences with the staff of the Civil Aeronautics Board, Eastern entered into a stipulation of facts and consent to issuance of an order to cease and desist, the pertinent part of which is hereinabove quoted.

On June 23, 1959, Eastern was authorized to provide a one way passenger economy daytime fare between New York, N. Y. and Miami, Florida, of $45 per person, to be effective July 23, 1959. Similar authorization was granted National Airlines, Inc. (hereinafter called National) and Northeast Airlines, Inc. (hereinafter called Northeast) effective respectively July 29, 1959 and August 1, 1959.

It appears that between July 23, 1959 and July 29, 1959, no other airline operating regularly scheduled daytime economy flights between New York and Miami offered a one way passenger rate equal to or less than $45. Accordingly, for that period, Eastern advertised in various publicity media that it offered "Lowest Daytime Fares" between New York and Miami. In anticipation, however, of an equalization of authorized rates for this run, Eastern and its Advertising Agency, Fletcher, Richards, Calkins & Holden, considered alternative promotional material to attract passengers for its airline. Directions were issued that the phrase "Lowest Daytime Fares" was to be eliminated from Eastern's advertisements as soon as any other air line was permitted to charge the $45 fare, and that thereafter there was to be substituted the phrase "lowest daytime

fares in history." It was the consensus of the members of the policy meeting representing both Eastern and its advertising agency that the new language would fairly present the facts without being misleading or deceptive or violating the terms of the cease and desist order. The revised copy was thought to express a concept of rates in point of view of time rather than in relation to competition with current fares of other airlines.

Notwithstanding the explicit instructions with respect to the use of the phrase "lowest daytime fares," there appeared in the Miami Herald, a daily newspaper published in Miami, Florida, on July 29, 1959, a paid advertisement of Eastern containing the statement "Lowest Daytime Fares, New York Non-Stop Only $45."

Count One of the information embraces this incident, charging that in so advertising defendant did knowingly and willfully violate Order No. E–11560, supra, since on that date another carrier offered the same fare between the same points. Defendant admits the advertisement but asserts, *inter alia*, that it was unwittingly carried in the Miami Herald, and hence not a willful act in violation of the order of the Civil Aeronautics Board.

John D. Walker, the copy supervisor for Eastern's advertising agency, gave testimony tending to substantiate defendant's claim that the July 29th advertisement in the Miami Herald was inadvertent. He explained that it was "an unfortunate mistake" on the part of the agency which had a "clear mandate * * * not to run that ad," when the fares of competitors were equalized. He suggested, as possible reasons for the unauthorized action, that during the week in question the agency prepared some 200 advertisements for distribution in 120-odd cities; that the insertion order did not properly identify the advertisement by reference to its entire phraseology; or that the office identification number for "Lowest Daytime Fares" of 59–1363, was so similar to the number for "Low-

est Daytime Fares in History" to wit, 59–1393, that the two might easily have been confused.

■ § 902(a) supra, restricts criminal responsibility for the acts which it punishes to those which are "knowingly and willfully" performed. Innocent violations are neither embraced by its provisions nor included within its orbit. To fall within the scope of knowing and willful conduct an act must have been "conscious and intentional, deliberate and voluntary, rather than merely negligent." United States v. Joralemon Brothers, Inc., D.C., 174 F.Supp. 262, 263. See also Inland Freight Lines v. United States, 10 Cir., 191 F.2d 313; United States v. E. Brooke Matlack, Inc., D.C., 149 F.Supp. 814; Riss & Company, Inc. v. United States, 8 Cir., 262 F.2d 245; United States v. Illinois Central Railroad Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773; United States v. Texas & P. R. Co., C.C., 185 F. 820; United States v. Wishnatzki et al., 2 Cir., 77 F.2d 357.

An exhaustive consideration of the phrase "knowingly and willfully" in statutes of similar purport undertaken by Circuit Judge Matthes in Riss & Company, Inc. v. United States of America, supra, 262 F.2d at page 248, reveals the following:

"Contentions, similar to that here advanced by defendant, have received judicial consideration in cases where the involved statute forming the basis for the prosecution or recovery of penalty used the words 'knowingly and willfully.' From decisional law, the principle emerged that determination of the meaning of those words rested upon the character of the offense charged. Thus in Chicago, St. P., M. & O. R. Co. v. United States, 8 Cir., 162 F. 835, certiorari denied 212 U.S. 579, 29

S.Ct. 689, 53 L.Ed. 659, where this Court was concerned with a charge that defendant had granted rebates in violation of the statute known as the 'Elkins Act,' 49 U.S.C.A. § 41 et seq. this pronouncement appears at page 842 of 162 F.: 'In most cases the evil mind or bad intent accompanies the doing of a wrongful act, and no difficulty arises in the disposition of a case involving an offense malum in se.[2] It is only when an offense malum prohibitum[3] is charged that the application of the general doctrine becomes doubtful.'

"St. Louis & S. F. R. Co. v. United States, 8 Cir., 169 F. 69, 70, concerned an action to recover a penalty for failure of defendant to comply with a statute providing for the manner of handling livestock in transit, known as the '28-hour law.' The opinion deals specifically with the meaning of the words 'knowingly and willfully' as used in the statute. Speaking through Judge Van Devanter, later Mr. Justice Van Devanter, this definition was laid down, at page 71 of 169 F.: ' "Knowingly" evidently means with a knowledge of the facts which taken together constitute the failure to comply with the statute, * * *. "Willfully" means something not expressed by "knowingly," else both would not be used conjunctively * * * But it does not mean with intent to injure the cattle or to inflict loss upon their owner because such intent on the part of a carrier is hardly within the pale of actual experience or reasonable supposition. * * * So, giving effect to these considerations, we are persuaded that it means purposely or obstinately and is designed to describe the attitude of a carrier, who, having a free will or choice, *either intentionally disre-*

---

2. "Literally 'a wrong in itself.' An act involving illegality from the very nature of the transaction, on principles of natural, moral, and public law." 54

C.J.S. p. 909. See also Black's Law Dictionary, 4th Ed.

3. "An act which is wrong only because made so by statute." 54 C.J.S. p. 909; Black's Law Dictionary, 4th Ed.

*gards the statute or is plainly indifferent to 'its requirements.'* (Emphasis added.) The foregoing interpretation and definition by this Court was adopted by the Ninth Circuit in Oregon-Washington R. & Nav. Co. v. United States, 205 F. 337, 339, also involving a penalty for confining a consignment of hogs for more than thirty-six hours without unloading in a humane manner; and in United States v. Illinois Central Railroad Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773, the Supreme Court approved of this court's definition of the term 'willfully' in this language, 303 U.S. at page 243, 58 S.Ct. at page 535: 'That statement has been found a useful guide to the meaning of the word "willfully" and to its right application in suits for penalties under section 3 [45 U.S.C.A. § 73] (the 28-hour law).' (Citing cases.) Also of interest is the following observation by the Supreme Court in the same case, 303 U.S. at pages 242 and 243, 58 S.Ct. at page 535: 'Mere omission with knowledge of the facts is not enough. The penalty may not be recovered unless the carrier is also shown "willfully" to have failed. In statutes denouncing offenses involving turpitude, "willfully" is generally used to mean with evil purpose, criminal intent or the like. But in those denouncing acts not in themselves wrong, the word is often used without any such implication. Our opinion in United States v. Murdock, 290 U.S. 389, 394 [54 S.Ct. 223, 225, 78 L.Ed. 381], shows that it often denotes that which is "intentional, or knowing, or voluntary, as distinguished from accidental," and that it is employed to characterize "conduct marked by careless disregard whether or not one has the right so to act." ' In Boone v. United States, 6 Cir., 109 F.2d 560, 561, 563, a criminal prosecution based upon an indictment charging that defendant did 'knowingly and willfully solicit, accept and receive' a rebate from a railroad company, the court disposed of a contention comparable to that here advanced, ruling the question in these words, 109 F.2d at page 563: 'The penalty is not imposed for unwitting failure to comply with the statute, but for intentionally, carelessly, knowingly or voluntarily disregarding the provisions of the Act and its violation requires neither evil purpose nor criminal intent.' Citing United States v. Illinois Central Railroad Co., supra. See also and cf. American Surety Co. of New York v. Sullivan, 2 Cir., 7 F.2d 605, an opinion by Judge Hand.

"More to the point on the facts here is United States v. E. Brooke Matlack, Inc., D.C.Md., 149 F.Supp. 814, 816, where the defendant carrier was charged criminally in a 66-count information under the same § 322 we have before us, for failing to require its drivers to file daily logs showing activities during the day as required by § 195.8 of the ICC regulation. As here, the defendant insisted that its failure to require the filing of proper logs was not due to 'willful and knowing conduct' on its part. In a well-reasoned and sound opinion the court ruled adversely to defendant, and among other things had this to say at page 819 of 149 F.Supp.:

" 'The meaning and effect of the word "willful" depends upon the context in which it is used in a criminal or penal statute. United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381; Spies v. United States, 317 U.S. 492, at page 497, 63 S.Ct. 364, 87 L.Ed. 418; United States v. Illinois Central R.R. Co., 303 U.S. 239, 58 S.Ct. 533, 82 L.Ed. 773. * * *

" 'In the context of the criminal statute involved in this case the word does not connote the existence of an evil motive as it does in some situations involving moral turpitude,

as, for instance, in an attempt to wilfully evade the payment of income taxes and thus to cheat the government. See Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, supra. The statute in the present case does not create a crime of moral turpitude, such as were the well known felonies at common law, but enacts a new statutory requirement to be observed by interstate motor carriers in the interest of public safety.'" [Italics quoted.]

■ Whereas the record under review in the Riss case established a course of conduct of acts in violation of the pertinent statute over a long period of time, against which a plea of inadvertence was held insufficient to negate knowledge and willfulness, the court is here confronted with an isolated instance of a technical violation on the very day when equal competitive rates became effective. The element of conscious and deliberate intent to disobey the precepts of the cease and desist order has not been spelled out by the prosecution. On the contrary, it affirmatively appears that the proscribed language resulted from an oversight which was not discovered for many months after it occurred. It was neither contemplated, nor purposefully undertaken, and did in fact run counter to explicit instructions not to use the phrase in question when it did not truthfully represent that Eastern's fares were lowest. Under the circumstances outlined by the copy supervisor of defendant's advertising agency, it seems clear that an excusable failure to comply with the cease and desist order was all that occurred.

Accordingly the Court finds the defendant not guilty of the charge alleged in Count One.

Count Two of the information complains of an advertisement in the New York Times, a daily newspaper printed and published in New York, N. Y. but circulated in the Southern District of Florida on August 5, 1959, wherein defendant offered "Lowest Daytime Fares in History—Miami Non-Stop $45 plus tax," notwithstanding that on that day both National and Northeast were authorized to, and did offer, the same fare for the same flight, in violation of said cease and desist order.

■ A primary defense to Count Two of the indictment is jurisdictional. It rests upon the contention that the alleged offense, if any, was wholly committed in the Southern District of New York and, therefore, this Court is without jurisdiction to try it.

This issue must, of course, be resolved before any consideration of the effect and tenor of the advertisement, as potentially violative of the cease and desist order, may be undertaken.

It appears from the evidence jointly introduced by the parties (Joint Exhibit 5) that the Dade County Newsdealers Supply Co. of Miami, Florida, is a regular distributor for the New York Times, and that on August 5, 1959, approximately 1,500 copies of the edition for that day were distributed to various retail outlets in the Greater Miami area.

Additional evidence interposed by defendant establishes that Eastern's advertisements for publication in the New York Times are geared for the Metropolitan New York area and are not intended to engage readers in the Miami area. In this connection it may properly be noted that the advertisement for August 5, 1959 (Appendix D to Joint Exhibit 1) sets forth a fare rate from New York to Miami and provides telephone numbers convenient for the use of prospective passengers in the vicinity of New York. It further appears that the order for this advertisement was placed and paid for in the Borough of Manhattan, City of New York, and was not accompanied by any representation that the New York Times is circulated within the environs of the City of Miami.

Accordingly, if this Court has jurisdiction over the allegations of Count Two, it derives solely from the fact that 1,500 copies of the New York Times for August 5, 1959, were circulated in the Greater Miami Area.

To be sure, § 903, supra, provides that any offense under the Federal Aviation Act begun in one jurisdiction and completed in another may be tried in either. But it would unduly strain the limits of its intendment to conclude that this provision ought to be applied in this instance. This is no case of a continuing offense partially committed in one jurisdiction and completed in another. All of defendant's acts with respect to the advertisement of August 5, 1959, were performed and completed in the City of New York. Cf. Davis et al. v. United States, 6 Cir., 104 F. 136. Its relationship to the publication of the advertisement, and power of control over it, ceased when the newspaper was printed. Under the circumstance that no representation was made to defendant that the New York Times is distributed elsewhere than in New York, defendant is not chargeable with the actions of the newspaper which resulted in the forwarding of some 1,500 copies for circulation in Miami.

■ Article III, Section 2, Clause 3 of the Constitution of the United States, and the Sixth Amendment to the Constitution both require that trials be held in the State where crimes are committed. Constructions in derogation of these constitutional guaranties are not favored. United States v. Johnson et al., 323 U.S. 273, 65 S.Ct. 249, 251, 89 L.Ed. 236; United States v. Smith et al., D.C., 173 F. 227. "If an enactment of Congress equally permits the underlying spirit of the constitutional concern for trial in the vicinage to be respected rather than to be disrespected, construction should go in the direction of constitutional policy even though not commanded by it." United States v. Johnson et al., supra.

If in the publication of the advertisement in the New York Times on August 5, 1959, defendant contravened the provisions of the cease and desist order, supra, that offense is not triable in the Southern District of Florida. The allegations of Count Two of the information before this Court are, therefore, dismissed.

In the remaining fourteen counts of the information defendant is charged with violation of the cease and desist order occasioned by its having arranged for the broadcast over the facilities of Radio Station WCKR, operating in Miami, Florida, during various and separate days in the month of August, 1959, of the following advertisement:

"Fly Eastern Airline's economy day coach non-stop to New York. Lowest daytime fares in history. Only $45.00 plus tax to New York. Fly Eastern's economy day coach to New York and save!"

The broadcasts are not denied. The gravamen of the defense to the charge of knowingly and willfully violating the provisions of § 902(a), supra, and of the cease and desist order is that the phrase "lowest fares in history" is not equitable with the words "lowest fares," and hence that no violations have occurred.

■ Under well settled principles of criminal law, words in a penal statute, or regulation having the force and effect of law, are to be strictly construed in favor of the accused. Harrison v. Vose, 9 How. 372, 50 U.S. 372, 13 L.Ed. 179; North American Van Lines, Inc. v. United States, 6 Cir., 243 F.2d 693; United States v. Resnick et al., 299 U.S. 207, 57 S.Ct. 126, 81 L.Ed. 127. Yet the rule does not require so limited a meaning as to frustrate the purpose for which the law is adopted. United States v. Wishnatzki et al., 2 Cir., 77 F.2d 357.

■ If the acts proscribed are couched in language which is vague, uncertain, indefinite, or ambiguous, so "that men of common intelligence must necessarily guess at its meaning or differ as to its application," the enactment is invalid as a deprivation of due process of law. Connally et al. v. General Construction Company, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322; Lanzetta et al. v. State of New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888; Winters v. People of State of New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840. But the requirement of certainty is not an absolute, for language is at best the imperfect instrument of man's

ability to communicate. That which is reasonably well understood by those to whom its terms are addressed sets an adequate standard of definiteness. As Mr. Justice Clark has so ably expressed the rule in Boyce Motor Lines, Inc. v. United States, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367:

> "A criminal statute must be sufficiently definite to give notice of the required conduct to one who would avoid its penalties, and to guide the judge in its application and the lawyer in defending one charged with its violation.[5] But few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.[6]"

■ In the light of the proceedings before the Civil Aeronautics Board it does not seem that the order to cease and desist is uncertain or relegates to the realm of conjecture the purpose of its restraint or the motivating causes surrounding its promulgation. Counsel for defendant appears to have little difficulty in ascertaining the meaning of its proscription. In a memorandum submitted to this Court counsel states, *"Obviously, the vice struck at* [by the words "lowest fares"] *was advertising which might represent to the public that one carrier had the lowest fare at that time,* when it fact another carrier offered an identical fare," (Italics quoted.) This is, indeed, the act which the order condemns.

Whether or not representations tending to mislead in this connection may have been made is not determinable, however, by any naked comparison between "lowest fares" and "lowest fares in history." Words taken from their context often acquire meanings quite different from those they otherwise possess. It does not suffice to say, therefore, that in the opinion of defendant's advertising committee the phrase "lowest fares in history" was perfectly honest and did not conflict with the cease and desist order. It is readily conceivable that by ingenious placement "lowest fares in history" might imply competitively that no other carrier offered such fares, (the act forbidden), or otherwise might simply express that in point of time air rates between two given cities have never been lower.

■ A plausible argument might well be advanced that in an advertisement of the character which appeared in the New York Times on August 5, 1959 (no longer here in issue) where "lowest daytime fares in history" is set apart from the name of the carrier, that advice of general information as to passenger rates of airlines is being supplied. Quite another situation is provided, however, in the case of the material broadcast over Radio Station WCKR. Not only are the critical words completely surrounded by reference to Eastern's economy day coach flights, but the listener is exhorted to fly "Eastern's economy day coach * * * and *save!*" (Italics supplied.) Here is a statement calculated by its every intendment to suggest that Eastern's rates are, indeed, lower than its competitors, which advice is clearly misleading as both National and Northeast were offering identical fares at that time.

In these instances of the use of the phrase "lowest fares in history" in the radio broadcasts complained of, defendant has represented to the public, con-

---

5. Lanzetta v. State of New Jersey, 1939, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888.

6. Nash v. United States, 1913, 229 U.S. 373, 377, 33 S.Ct. 780, 57 L.Ed. 1232;

Hygrade Provision Co. v. Sherman, 1925, 266 U.S. 497, 502–503, 45 S.Ct. 141, 69 L.Ed. 402; United States v. Petrillo, 1947, 332 U.S. 1, 7–8, 67 S.Ct. 1538, 91 L.Ed. 1877.

trary to the precepts of the order to cease and desist that its fares are the lowest. The Court finds in such actions a knowing and willful violation of said order, and, accordingly, of the provisions of said § 902(a), supra. Defendant is guilty, as charged, in Counts Three, Four, Seven, Eight, Ten, Eleven, Twelve, Fourteen, Fifteen, Sixteen, Eighteen, Nineteen, Twenty and Twenty-two of the information herein filed. By virtue of the provisions of said § 902(a) a fine in the sum of $500.00 is herewith imposed on Count Three, $600.00 on Count Four, $700.00 on Count Seven, $800.00 on Count Eight, $900.00 on Count Ten, $1,-000.00 on Count Eleven, $1,100.00 on Count Twelve, $1,200.00 on Count Fourteen, $1,300.00 on Count Fifteen, $1,400.-00 on Count Sixteen, $1,500.00 on Count Eighteen, $1,600.00 on Count Nineteen, $1,700.00 on Count Twenty and $1,800.-00 on Count Twenty-two.

Defendant shall pay said fines on or before April 1, 1961.

Judgment will be entered in accordance with this decision.