## UNITED STATES v. NATIONAL CITY LINES, Inc., et al.
### Civil Action No. 6747.

United States District Court
S. D. California. Central Division.
Oct. 12, 1948.

O'Melveny & Myers, by Jackson W. Chance, all of Los Angeles, Cal., and Hodges & Reavis, Pantaleoni & Downey, by Martin Jacobs, all of New York City, for defendants National City Lines, Inc., American City Lines, Inc., and Pacific City Lines, Inc.

Cosgrove, Clayton, Cramer & Diether, by T. B. Cosgrove and Leonard A. Diether, all of Los Angeles, Cal., and Henry M. Hogan, of Detroit, Mich., for defendant General Motors Corporation.

Finlayson, Bennett & Morrow and H. T. Morrow, all of Los Angeles, Cal., for defendant Phillips Petroleum Co.

Wright & Millikan and Charles E. Millikan, all of Los Angeles, Cal., for defendant Mack Mfg. Corporation.

Joseph Thomas, of Akron, Ohio, and Haight, Trippet & Syvertson and Oscar A. Trippet, all of Los Angeles, Cal., for defendant Firestone Tire & Rubber Co.

Lawler, Felix & Hall and John M. Hall, all of Los Angeles, Cal., for defendants Standard Oil Co. of California and Federal Engineering Corporation.

William C. Dixon, Sp. Asst. to Atty. Gen., and Jesse R. O'Malley, Edwin U. Driscoll and Alex D. Fred, Sp. Attys., Department of Justice, all of Los Angeles, Cal., for plaintiff.

YANKWICH, District Judge.

## I.

### The Motion to Transfer.

This civil action seeking injunctive and other relief against the defendants for violation of the Sherman Anti-Trust Act [1] was instituted on April 10, 1947. On September 29, 1947, I granted the motion of the defendants to dismiss the action on the ground that our district was an inappropriate forum for its maintenance and prosecution.[2] On direct appeal to the Supreme Court, pursuant to the special provision of the Judicial Code,[3] that Court reversed the order [4] upon the ground that the doctrine of forum non conveniens does not apply to civil actions of this character, in which the choice of venue is de-

---

[1] 15 U.S.C.A. § 4.

[2] United States v. National City Lines, Inc., 1947, D.C.Cal., 7 F.R.D. 456.

[3] 15 U.S.C.A. § 29, now 28 U.S.C.A. § 2101.

[4] United States v. National City Lines, 334 U.S. 573, 68 S.Ct. 1169.

termined by Section 12 of the Clayton Act.[5]

After the return of the mandate to this Court, the defendants moved to transfer the cause to the district court for the Northern District of Illinois, Eastern Division—the district to which a companion criminal prosecution against nine corporate defendants involved in this action and seven individuals, originally instituted in this district, was transferred by me on August 14, 1947.[6] That transfer was made under the provision for change of venue contained in the Federal Rules of Criminal Procedure.[7]

The motion to transfer the present proceeding is made under a new section of the revised Judicial Code, which went into effect September 1, 1948.[8]

The Government resists the motion and has filed a countermotion to strike the motion to transfer.

## II.

### Change of Venue.

In the main, the position of the parties to this litigation is the same as to both motions. For, in the last analysis, it relates to the applicability or non-applicability of the new provision for the transfer of civil actions to other districts to an action of this character, which reads:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer *any civil action* to any other district or division where it might have been brought." (Emphasis added.)[9]

The clause is part of a section which the Revisers have entitled "Change of Venue," and which also allows the transfer of civil actions from one division to another,[10] and the trial of any civil action at any place within the division.[11]

A consideration of this enactment calls for certain general and almost obvious observations.

We are not dealing with an *amendatory statute*, but with a revision of the entire Judicial Code, the first one attempted since 1911. This aim was set forth with thorough emphasis in the Reports of the Senate and House Judiciary Committees. The Senate Committee on the Judiciary, in its Report to accompany H.R. 3214, stated:

"It is evident, therefore, that *a thorough codification and revision of the statutes* relating to the judiciary and *its procedure* is very much in the public interest in order that the law in this important field may be *clear, certain, and readily available*.

"The bill H.R. 3214 accomplishes these desirable results. The statutory material presently in force has been arranged in the bill *in a logical and consistent way*, rendering it easily ascertainable. *Existing inconsistencies and ambiguities have been removed and obsolete and archaic provisions eliminated or modernized.*

"By enacting this bill into positive law as title 28 of the United States Code, *that title will thereby become the law rather than merely presumptive evidence of the law*, and reference to prior volumes of the Statutes at Large will be rendered wholly unnecessary."[12] (Emphasis added.)

The Report of the House Committee on the Judiciary, dated April 25, 1947, which accompanied the Resolution, stressed the object of the resolution *"to revise, codify, and enact into law."*[13] It called attention to the changes in the national scene which "make imperative this *revision* of the Judicial Code."[14] (Emphasis added.)

Professor James Wm. Moore, who was one of the consultants on the revision, stated, on March 7, 1947, at the hearing

---

[5] 15 U.S.C.A. § 22.

[6] United States v. National City Lines, 1947, D.C.Cal., 7 F.R.D. 393.

[7] Rule 21(b), Federal Rules of Criminal Procedure, 18 U.S.C.A.

[8] 28 U.S.C.A. § 1404(a).

[9] 28 U.S.C.A. § 1404(a).

[10] 28 U.S.C.A. § 1404(b).

[11] 28 U.S.C.A. § 1404(c).

[12] 28 U.S.C. Congressional Service, pp. 1675, 1676, Senate Report No. 1559, 80th Congress, Second Session.

[13] 28 U.S.C. Congressional Service, p. 1692, House Report No. 308, 80th Congress, First Session.

[14] 28 U.S.C. Congressional Service, p. 1693, House Report No. 308, 80th Congress, First Session.

before Subcommittee No. 1 of the House Judiciary Committee:

*"The revision is a statement of the law and not merely presumptive. If enacted, the revision will state the law on matters covered by it."* [15]  (Emphasis added.)

He added:

"Now, however, in attempting a revision of what is essentially only one title of the United States Code, it seems proper to state *what the law is and not make the revision merely presumptive of the law. The Federal judiciary, practitioners, and other interested parties, are entitled to that much certainty."* [16]  Emphasis added.)

These facts are important. For, in attempting to discern the purpose of the enactment, we are, at the outset, confronted with the proposition that it created a *new procedural* scheme, namely, a method of transferring cases from one district to another, which did not exist before. This was accomplished not by amending existing law, but by including the particular provision in a single piece of legislation, the object of which was to enact a revised code dealing with the jurisdiction of, and procedure in, the courts of the United States.

In endeavoring to achieve this object, the Congress strove to attain uniformity and simplicity of expression. The various circumlocutions, which had heretofore been used to designate the varieties of actions, were abandoned and the phrase "civil action" was substituted. The reviser's notes, which the Committees made a part of their report to the two Houses of the Congress, reveal this intention. Indeed, this appears in the very section on change of venue.[17] The phrase "any civil action" is given as the equivalent of "any action, suit or proceeding of a civil nature" used in subdivision (b).[18] And the reviser's notes leave no doubt that this was their intention in the entire revision.[19]

### III.

#### The Manner of Changing Venue.

■ The aim of the Congress in enacting the section allowing transfers from one district to another, and from one division

---

[15] 28 U.S.C. Congressional Service, p. 1907.

[16] 28 U.S.C. Congressional Service, p. 1908.

[17] 28 U.S.C.A. § 1404(a, c).

[18] 28 U.S.C.A. § 1404(b). The following sections, among others, and the reviser's notes to them, show intent to use the phrase *to cover civil cases of whatever nature,* in conformity with the announced policy of uniformity: Section 1333 (admiralty and maritime cases); 1335 (interpleader); 1336 (interstate commerce commissions orders); 1337 (commerce and anti-trust regulations); 1338 (patents, copyright, trademark, unfair competition); 1339 (postal matters); 1340 (internal revenue and customs duties); 1343 (civil rights); 1344 (election disputes); 1346 (United States as defendant); 1347 (partition where United States is tenant); 1348 (bank association as party); 1349 (federal corporation as party); 1350 (alien's action for tort); 1351 (actions against consuls); 1353 (actions on Indian allotments).

[19] By way of illustration, we append the reviser's notes to three of the sections referred to in the preceding Note:

"Section 1336—Section Revised. Based on title 28, U.S.C., 1940 ed. § 41(27), (28) (Mar. 3, 1911, ch. 231, §§ 24(27), (28), 207, 36 Stat. 1091, 1148; Oct. 22, 1913, ch. 32, 38 Stat. 219). Words 'Except as otherwise provided by enactment of Congress' were inserted because of certain similar cases of which the courts of appeals are given jurisdiction. (See, for example, section 21 of title 15, U.S.C., 1940 ed., Commerce and Trade). Words 'any civil action' were substituted for 'all cases' and 'cases' in view of rule 2 of the Federal Rules of Civil Procedure. Changes were made in phraseology.

"Section 1337—Section Revised. Based on title 28, U.S.C., 1940 ed., § 41(8), (23) (Mar. 3, 1911, ch. 231, § 24, pars. 8, 23, 36 Stat. 1092, 1093; Oct. 22, 1913, ch. 32, 38 Stat. 219). Words 'civil action' were substituted for 'suits', in view of rule 2 of the Federal Rules of Civil Procedure. Changes were made in phraseology.

"Section 1338—Section Revised. Based on title 28, U.S.C., 1940 ed., §§ 41(7) and 371(5) (Mar. 3, 1911, ch. 231, §§ 24, par. 7, 256, par. 5, 36 Stat. 1092, 1160). Section consolidates section 41(7) with section 371(5) of title 28, U.S.C., 1940 ed., with necessary changes in phraseology. Words 'of any civil action' were substituted for 'all suits at law or in equity' and 'cases' to conform section to rule 2 of the Federal Rules of Civil Procedure." 28 U.S.C. Congressional Service, p. 1838.

to another, was to cover the entire field and set down the circumstances under which such transfers could be had, either by the consent of the parties, or upon a proper showing.

Professor Moore, in his statement before the Subcommittee of the House Judiciary Committee, made this very plain. He said:

"*Venue provisions have not been altered by the revision. Two changes of importance have, however, been made. Improper venue is no longer grounds for dismissal of an action in the Federal courts. Instead the district court is to transfer the case to the proper venue.* See section 1406. *And section 1404 introduces an element of convenience which gives the court the power to transfer a case for the convenience of parties and witnesses to another district. Both of these changes were in line with modern State practice; and the provision for change of venue on the grounds of convenience is also embodied in the Bankruptcy Act for corporate reorganization, section 118, Eleventh United States Code, section 518.*"[20] (Emphasis added)

The reviser's notes to the section state:

"Subsection (a) was drafted in accordance with the doctrine of forum non conveniens, permitting transfer to a more convenient forum, *even though the venue is proper.* As an example of the need of such a provision, see Baltimore & Ohio R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28, *which was prosecuted under the Federal Employer's Liability Act in New York, although the accident occurred and the employee resided in Ohio.* The new subsection *requires* the court to determine that the transfer is necessary for convenience of the parties and witnesses, and further, that it is in the interest of justice to do so."[21] (Emphasis added)

■ It is, therefore, evident that the aim of the Congress was (1) to establish, through this revision, a single procedural scheme to cover all incidences of procedure in the federal courts not provided for by the Rules of Civil Procedure; and (2) to apply the provisions, *except where otherwise indicated, to all civil actions,* of whatever nature.

■ The aim being procedural, it is axiomatic that, unless the contrary appears, the provisions are applicable to pending proceedings.[22]

■ The principle which forbids application of new enactments or revisions to pending actions applies to statutes dealing with substantive rights only.[23] At times, it is difficult to draw a distinct line between substantive law and procedure. And many procedural changes have, historically, had a lasting effect on substantive rights, as, for instance, the rule allowing the jury to judge both the law and the facts in criminal libel.[24] Nonetheless, matters of venue and change of venue are, as a rule, mere incidences of procedure. And stat-

---

[20] 28 U.S.C. Congressional Service, p. 1969.

[21] 28 U.S.C. Congressional Service, p. 1853.

[22] 50 Am.Jur., Statutes, Sec. 482; Campbell v. Holt, 1885, 115 U.S. 620, 6 S. Ct. 209, 29 L.Ed. 483; William Danzer & Co. v. Gulf & S. I. R. Co., 1925, 268 U.S. 633, 45 S.Ct. 612, 69 L.Ed. 1126; Graham & Foster v. Goodcell, 1931, 282 U.S. 409, 418, 51 S.Ct. 186, 75 L.Ed. 415; Funkhouser v. J. B. Preston Co., 1933, 290 U.S. 163, 167, 54 S.Ct. 134, 78 L.Ed. 243; In re Monsen, of California, 1935, 7 Cir., 74 F.2d 411; United States v. Standard Oil Co., of California, 1937, D.C.Cal., 21 F.Supp. 645, 660; Connett v. City of Jerseyville, 1938, 7 Cir., 96 F.2d 392, 400; Bowles v. Strickland, 1945, 5 Cir., 151 F.2d 419.

[23] 50 Am.Jur., Statutes, Secs. 476, 477; United States v. Heth, 1806, 3 Cranch 399, 413, 2 L.Ed. 479; Baltimore & P. Railroad Co. v. Grant, 1878, 98 U.S. 398, 25 L.Ed. 231; White v. United States, 1903, 191 U.S. 545, 24 S.Ct. 171, 48 L.Ed. 295; Winfree v. Northern Pacific R. Co., 1913, 227 U.S. 296, 33 S.Ct. 273, 57 L.Ed. 518; Shwab v. Doyle, 1922, 258 U.S. 529, 535, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454; United States v. Magnolia Petroleum Co., 1928, 276 U.S. 160, 163, 48 S.Ct. 236, 72 L.Ed. 509; Hassett v. Welch, 1938, 303 U.S. 303, 314, 58 S.Ct. 559, 82 L.Ed. 858; Claridge Apartments Co. v. Commissioner, 1944, 323 U.S. 141, 164, 65 S.Ct. 172, 89 L.Ed. 139; Commissioner v. Commodore, 1943, 6 Cir., 135 F.2d 89, 91, 92.

[24] Yankwich, Essays in the Law of Libel, 1929, pp. 267–272.

utes relating to remedies and procedure operate retrospectively.[25]

## IV.

### Change of Venue in Anti-Trust Cases

These premised, we come to the nub of the controversy, which is:

Does the provision for transfer apply to the present action?

I am of the view that it applies to *all* pending civil cases, as readily appears from the legislative history and the legal principles just considered. And it applies to anti trust cases unless we can find in the decision of the Supreme Court in the present case language indicating that the special venue statute in anti trust cases[26] as the Supreme Court construes it, immunizes such actions against a general transfer enactment of the type under consideration, as the Court has held it protects it from the impact of the doctrine of forum non conveniens.

So it becomes imperative to analyze the language of the Court in its proper setting. The gist of the majority opinion is contained in the statement of Mr. Justice Rutledge:

"When therefore Congress came to face the problem of making the nation's antitrust policy more effective through the Clayton Act's provisions, that body was not confronted with any problem of abuse by plaintiffs in selecting venue for antitrust suits; nor was it concerned with any question of providing means by which the defendants in such suits might defeat the plaintiff's choice to serve their own convenience. *Congress' concern was quite the opposite. It was to provide broader and more effective relief, both substantively and procedurally, for persons injured by violations of its antitrust* policy. Insofar as convenience in bringing suit and conducting trial was involved, *the purpose was to make these less inconvenient for plaintiffs or, as was said in the Eastman opinion, to remove the 'often * * * insuperable obstacle' thrown in their way by the existing venue restrictions.*

"To have broadened the choice of venue for the reasons which brought about that action, only to have it narrowed again by application of the vague and discretionary power comprehended by forum non conveniens would have been incongruous, to say the least. In making the change Congress did not authorize plaintiffs to institute civil antitrust suits in the newly specified districts, merely in order to have them transferred back for trial to one of the districts comprehended by § 7. *It intended trial to take place in the district specified by the statute and selected by the plaintiff.*" (Emphasis added)[27]

The Government sees in the last italicized sentence a declaration that the institution of the action, and the consequent right to choose venue, imply the *absolute right of trial* in the place chosen.

We need not consider the contention of the defendants that the legislative history *does not* support the Court's interpretation. We cannot make our own gloss in a matter in which the Supreme Court has spoken so recently. We must give to the language used its full implication. So doing, however, we must bear in mind the theoretical basis of the opinion.

It was the Government's contention before the high court, *as it was before me,* that the doctrine of *forum non conveniens does not apply to actions instituted under special venue statutes.* Mr. Justice Jackson, who wrote the majority opinion in the Gulf[28] and Koster[29] cases, adopted this view as flowing from those decisions. In his concurring opinion in this case, in commenting on those cases, he says:

"We have just had occasion to review and to decide, by a divided Court, cases involving the doctrine of forum non conveniens. Gulf Oil Corp. v. Gilbert, 330

[25] See cases cited in Note 22. And see, Richard v. National City Bank, D.C.N.Y. 1934, 6 F.Supp. 156; Benas v. Maher, 1942, 8 Cir., 128 F.2d 247, 251.

[26] 15 U.S.C.A. § 29, now 28 U.S.C.A. § 2101.

[27] United States v. National City Lines,

Inc., 1948, 334 U.S. 573, 581, 68 S.Ct. 1169, 1174.

[28] Gulf Oil Co. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055.

[29] Koster v. Lumbermen's Mutual Casualty Co., 1947, 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067.

U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055, Koster v. (American) Lumbermen's Mutual Casualty Co., 330 U.S. 518, 67 S.Ct. 828, 91 L.Ed. 1067. We there held that, in cases where the plaintiff was in court in an ordinary civil suit only by reason of the venue statutes that apply generally, the court could exercise discretion in dismissing complaints to prevent imposition on its jurisdiction if the circumstances of the particular case showed an abuse of the option vested in plaintiff by the general venue statutes. *But we also pointed out that, where the choice of forum was authorized by a special venue statute, this discretion to dismiss would not be implied.* The distinctions there made between general and special venue statutes may have been overly simple from the view point of the dialectician. *But as working tools of everyday craftsmen they do serve to point out a difference that I think governs here.*[30]

Under this view of the law, the doctrine of forum non conveniens would apply only to cases arising under *general venue statutes.* It would not apply to those brought under *special venue statutes,* such as the Federal Employers' Liability, Act, 45 U.S.C.A. § 51 et seq., and the Anti Trust statutes, 15 U.S.C.A. § 1 et seq. But the majority opinion *did not so hold.* It did not choose to establish a principle to serve

as a guide in all cases. It preferred to hold merely that *the history of anti trust legislation shows an intent not to limit the choice of forum by the application of the doctrine of* forum non conveniens. And it interpreted its prior decisions as applying the same principle to the Federal Employers' Liability statute, in the light of its particular history. So the language of the majority opinion, when read in this perspective, means simply that, because of the legislative history of anti trust laws, the court declined to allow the application to them of the doctrine of forum non conveniens. Consequently, any implication of absolute choice of place of trial in anti trust cases must be read in that light. They stand proof against interference by the application of the doctrine of forum non conveniens. But are they impregnable to the legislative power of the Congress which granted the choice of forum in the first instance? I think not. The legislative history of the revision of the Judicial Code shows that the intent of the Congress was to overcome the absolute choice in cases of this character, in which the court's interpretation had resulted. And the "legislative intent" they sought to overcome was *their own* as found by the Court. The reviser's Notes and Professor Moore's statements, already referred to,[31] make this

---

[30] United States v. National City Lines, Inc., 1948, 334 U.S. at page 581, 68 S.Ct. at page 1182.

[31] See Notes 18, 19, 20, 21. In a recent address, Mr. Justice Jackson pointed out some of the difficulties inhering in any attempt to determine the meaning of a statute by legislative history. He said:

"I am coming to think it is a badly overdone practice, of dubious help to true interpretation and one which poses serious practical problems for a large part of the legal profession. The British courts, with their long accumulation of experience, consider Parliamentary proceedings too treacherous a ground for interpretation of statutes and refuse to go back of an Act itself to search for unenacted meanings. They thus follow Mr. Justice Holmes' statement, made, however, before he joined the Supreme Court, that 'We do not inquire what the legislature meant, we ask only what the statute means.' And, after all, *should a statute mean to a court what was in the*

*minds but not put into the words of men behind it, or should it mean what its language reasonably conveys to those who are expected to obey it?"* Jackson, Problems of Statutory Interpretation, 1948, 8 F.R.D. 121, 124. (Emphasis added)

The answer to the alternative is that given by the Supreme Court in an opinion in which Mr. Justice Holmes concurred:

"Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." Caminetti v. United States, 1917, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442, L.R.A.1917F, 502, Ann.Cas.1917B, 1168. And see, United States v. American Trucking Ass'ns, 1940, 310 U.S. 534, 543, 60 S.Ct. 1059, 84 L.Ed. 1345. Divergent views on the function of courts in such cases are expressed by Max Radin, 1929, Statutory Interpretation, 43 Harvard Law Rev. 863, 881–883, which comments

quite plain. The reference is only to the Kepner case.[32] Obviously, because the notes antedate the decision in the present case. They were placed before the Congress in March and April, 1948. The date of the decision was June 7, 1948. And the new Title 28 was approved on June 25, 1948.

■ One other observation. It is a fundamental rule of statutory interpretation that a statute general in its language is to be given general application.[33] No exceptions will be read into a statute of such character. The legislative history of the revision of this portion of the Judicial Code evidences an intention to follow the accepted pattern in this respect. This also appears from the use of the adjective "any", which is defined as follows:

"1. One indifferently out of a number; one (or, as pl., some) indiscriminately of whatever kind; specif; (a) Indicating a person, thing, event, etc., as not a particular or determinate individual of the given category but whichever one chance may select; this, that, or the other; one or another; * * * (b) Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exceptions; * * * (c) Indicating one person, thing, etc., taken with indifference to quality; one or some, however excellent or poor (more often

---

on the Caminetti case in Note 38, and James M. Landis, 1929, A Note on "Statutory Interpretation," 43 Harvard Law Review, 886, 889–893.

And when, as here, the language is explicit, resort to legislative history merely serves to show that the statute actually "means" what the legislature "meant". Differently put, legislative history simply corroborates the obvious meaning of the language used in the law. See, Taub v. Bowles, 1945, Em.App., 149 F.2d 817, 819–821. To read exceptions into such language is to disregard the evident. This we cannot do, especially when we are dealing, not with an amending act, but with an entire code revision. See, United States v. Sischo, 1923, 262 U.S. 165, 168, 169, 43 S.Ct. 511, 67 L.Ed. 925; United States v. Flores, 1933, 289 U.S. 137, 148–151, 53 S.Ct. 580, 77 L.Ed. 1086; 50 Am. Jur., Statutes, Secs. 446, 454. Under such circumstances, the doctrine of implied repeal need not concern us. More, as the discussion shows, the interpretation which we have adopted is not *inconsistent* with the right to choose venue. It merely subjects the choice to judicial qualification under definite conditions. The two provisions do not conflict. To the contrary, they supplement and complement each other.

The new provision does away with the right to dismiss for "improper venue". (See statement of Professor Moore, quoted in Part III of the opinion.) The doctrine of forum non conveniens, which allowed such dismissal if the forum was found inconvenient, disappears, and the right of transfer is substituted for it. We have clearly a complete and logical new scheme covering the entire field.

[32] Baltimore & Ohio R. Co. v. Kepner, 1941, 314 U.S. 44, 62 S.Ct. 6, 86 L.Ed. 28.

[33] 50 Am.Jur.Statutes, Secs. 432, 433. "The court cannot add an exception based on equitable grounds when Congress forbore to make such an exception". Louisville & Nashville Co. v. Mottley, 1911, 219 U.S. 467, 479, 31 S.Ct. 265, 269, 55 L.Ed. 297, 34 L.R.A.,N.S., 671. And see, Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 611, 64 S.Ct. 1215, 88 L.Ed. 1488, 153 A.L.R. 1007; United States v. Wishnatzki, 1935, 2 Cir., 77 F.2d 357, 358, 359. Behind these rulings is the thought that when the words used in a statute are general, it is judicial usurpation not to give them the inclusiveness which their meaning denotes. So, in the Addison case just referred to, the Court refused to dilute the word "all" to "substantially all". The Circuit Court of Appeals for the 2nd Circuit, speaking through Judge Frank, has expressed the same idea in this trenchant fashion:

"The familiar 'easy-to-say-so-if-that-is-what-was-meant' rule of statutory interpretation has full force here. The silence of 'Congress is strident. Judicial legislation is one of the facts of life, an inescapable and necessary one. But courts may not, as legislatures may, roam at large, confined only by the Constitution; their function, when dealing with legislative legislation, does not go beyond that of filling in small gaps left by the legislature—and to closing those gaps in accordance with what appears to have been the legislative purpose." Commissioner of Internal Revenue v. Beck's Estate, 1942, 2 Cir., 129 F.2d 243, 244, 245. On the application of this rule to private instruments see, James P. McBaine, The Rule Against Disturbing Plain Meaning of Writings, 1943, 31 Cal.Law Rev. 145.

the latter) ; as, any plan would be better than no plan."[34]

■ "Any" covers everything in a category or class. Its use excludes exceptions unless they are specifically given. For its primary meaning is "one indefinitely, or indifferently, out of a number."[35] And that the aim was to use the word in that sense is evident from the legislative history already given. This is also apparent from the fact that whenever, in this revision, the Congress intended either the whole revision or a specific provision in it, *not* to apply, they made specific exceptions from the generic phraseology. An example of this is found in Section 2680, 28 U.S.C.A. The revisers, after recodifying the Tort Claims Act, specifically excluded from its operation twelve distinct types of claims, which would have been included under the general terminology of the section.

So the whole scheme of the revision stands in the way of a construction which would exempt this special type of action from any of the incidences of procedure codified. More, this interpretation is not inconsistent with the aim of the special venue provision in antitrust cases.[36] *It stands unimpaired. The Government still has the choice of venue.*

However, the court may, under conditions prescribed by the Congress and "in the interest of justice," change the venue.

On the whole, therefore, there is no legal or factual reason for not giving full effect to the intention of the revisers in making this section applicable to antitrust actions.

## V.

The Discretionary Power to Transfer.

There remains the question: Do the facts warrant the granting of the motion? A *Conditions for Transfer*

Before answering this question by reference to the facts, we consider briefly the meaning of the transfer provision.

■ The wording of the clause is different from that of the corresponding provision in the criminal rules. The latter calls for a transfer "if the court is satisfied that in the interest of justice the proceeding should be transferred."[37] The section under consideration provides for transfer "for the convenience of parties and witnesses, in the interest of justice."[38] While both sections use the identical phrase "in the interest of justice" as a criterion, the civil transfer rule uses the phrase in juxtaposition with the convenience requirement. But the meaning of the phrase is the same in both instances:

"It implies conditions which assist, or are in aid of or in the furtherance of, justice. Both call for the doing of things, which bring about the type of justice which results when law is correctly applied and administered. They import the exercise of discretion which considers both the interests of the defendant and those of society. When commanded by a statute, they do not attempt to determine, in advance, the type of judicial action to be taken."[39]

In the case in which the phrase just quoted occurs, I considered the convenience of parties and witnesses as one of the criteria in determining whether a transfer should be made. And in the present case, I took into account the same element in considering the application of the doctrine of forum non conveniens.[40] In so doing, I did not weigh the convenience of the defendants only, but that of the Government also. The conclusion was arrived at after a balancing of conveniences. This is of the very essence of the judicial process in any matter which calls for the exercise of discretion. Indeed, I wrote:

"A court of equity should aim to balance societal and individual interest and to maintain the proper equilibrium between private rights and public weal."[41]

---

34 Webster's New International Dictionary, 1937 Ed., p. 1021.

35 3 C.J.S., Any, p. 1399.

36 15 U.S.C.A. § 22.

37 Rule 21(b), Federal Rules of Criminal Procedure.

38 28 U.S.C.A. § 1404(a).

39 United States v. National City Lines, Inc., 1947, D.C.Cal., 7 F.R.D. 393, 397.

40 United States v. National City Lines, Inc., 1947, D.C.Cal., 7 F.R.D. 456.

41 United States v. National City Lines, Inc., 1947, D.C.Cal., 7 F.R.D. 456, 466. And see, Yankwich, Increasing Judicial

The transfer provision which concerns us here depends on discretion for its application, as do the kindred provision in the criminal cases and the doctrine of inconvenient forum.

## B Should the Discretion be Exercised?

Having determined that the transfer provision is applicable to this litigation, our next inquiry is whether the discretion should be exercised under the facts in the case.

The factual situation did not change while the matter was before the Supreme Court. It is the same as existed when I granted the motion to dismiss. The affidavits filed with the prior motion have been refiled and adopted for the purposes of the present motions. The Government has filed no additional affidavits. But it was agreed at the hearing that the additional facts contained in the affidavit of Jesse R. O'Malley, one of counsel for the Government, in opposition to the affidavit of Denis B. Sullivan, filed in opposition to the Government's motion for an early trial date, might be considered. The affidavit merely recites that a transfer to the Northern District of Illinois, Eastern Division, might result in delay because of the crowded condition of the calendar of that court. It points to the fact that the transfer of the criminal case had resulted in delay.

Speculations as to possible time of trial are not determinative of the matter. Regardless of the condition of their calendars, district courts have it within their power to advance cases when public interest so requires. And if the need for immediate action is brought home to the judges of the District Court of Illinois, I am certain that they will arrange for as early a trial of this cause as could be had in this district. In the instant case, the Government could very readily have avoided the delay which resulted from its direct appeal from my ruling by refiling the case immediately in the Northern District of Illinois, Eastern Division, especially when the defendants had stipulated that they would not seek a dismissal if so refiled.[42]

I do not question the Government's right to seek the alternative of appeal in order to avoid a decision which it disapproved and which it did not desire to become established as an unchallenged precedent. However, in balancing the conveniences, we must exclude situations such as delay brought on by the voluntary act of the Government when it had another alternative.

---

Discretion in Criminal Proceedings, 1941, 1 F.R.D. 746.

The importance of proper fact-finding by judges is stressed by Judge Frank In re Fried, 1947, 2 Cir., 161 F.2d 453, 462:

"Mistakenly to apply a rule to non-existent facts—to facts mistakenly 'found' —is no less unjust, no less a defective operation of judicial administration, than to apply an erroneous 'substantive' legal rule to the actual facts. Either way, the policy expressed in the correct rule is frustrated. An error in 'finding' the facts thus yields what might be called 'injustice according to law.' The facts involved in any case are past facts. They do not walk into the courtroom. Judicial fact-finding, a human process by which a man or some men attempt to reconstruct a segment of an 'objective' past, is necessarily fallible. For it is a job of history-writing, and, like all history-writing, inescapably involves 'subjective' factors and encounters other obstacles sometimes insurmountable. But courts cannot shirk that job. And ac-knowledgment that the process can never reach perfection does not excuse us from rendering it free of all practically avoidable defects."

He treats the problem more fully in Say It With Music, 1948, LXI Harvard Law Review, 921, 949–955.

Judge Frank's approach to this problem is but a part of his preoccupation with the nature of the judicial process, and of the function of the Judge in modern society. I have dealt with this subject on numerous occasions. See Yankwich, Some of the Social Phases of the Administration of Justice, 1932, 5 S.Cal. Law Review, 189, 207; Yankwich, The Judge in Modern American Society, 1935, 40 Commercial Law Journal, pp. 171 et seq.; Yankwich, Judge in a Progressive Society, 1939, 14 L. A. Bar. Ass'n Bulletin, pp. 297 et seq.; and see, Yankwich, Findings in the Light of the Recent Amendments to the Rules of Civil Procedure, 1948, 8 F.R.D. 271, 283.

[42] United States v. National City Lines, 1947, D.C.Cal., 7 F.R.D. 456, 466.

I need not repeat the summary of the affidavits given in the two previous opinions.[43] Having re-examined them, and having considered the additional affidavits and facts in the record to which my attention has been called by both parties, I am of the view that the convenience of the parties and witnesses require the transfer of this case in the interest of justice.

Anticipating that such conclusion might be based on a balancing of conveniences, counsel for the Government intimated at the hearing that no resort could be had to such method in resolving the conflicting contentions. I agree that when the section speaks of the convenience "of parties and witnesses,"[44] it means that the convenience of both sides must be examined. But I know of no way of applying the requirement to a particular situation than by viewing the facts from both standpoints and giving preference to those which, in the court's opinion, preponderate to *such an extent as to make the choice in the interest.* of justice. Unless the right to choose between conflicting facts or assertions exists, the court could never determine a motion under this section *on the facts.* For if the mere assertion by the Government of its own convenience and the convenience of its witnesses were sufficient to stay action, we would be confronted with a power to paralyze judicial discretion, beside which the devastating effect of the historic liberum veto ("Nie Pozwalan"—"I don't permit") of the Polish nobles in their Diet (1572-1697) would dim into insignificance.

As I cannot so interpret the meaning of the section, I conclude that the showing in this case warrants transfer to the Northern District of Illinois, Eastern Division.

C *The Supreme Court did not Pass on the Facts.*

This conclusion is reached on the conviction that the Supreme Court, in reversing the order of dismissal, did so solely on the ground that the doctrine of *forum non conveniens did not apply* to anti trust actions. It did not undertake to determine whether the findings were supported by the evidence or there was abuse of discretion. The opinion of Mr. Justice Rutledge very pointedly states that the *sole question* which the Court was deciding was the applicability of the doctrine to cases of this character. The portions of the opinion which posit the problem read:

"The *principal question,* and the *only one* we find it necessary to consider, is whether the choice of forums given to the plaintiff by § 12 is *subject to qualification* by judicial application of the doctrine of forum non conveniens. * * *

"The *only question* presented concerning the court's power is whether, having jurisdiction and venue of the cause and personal jurisdiction of the defendants, the court also *was authorized to decline to exercise its jurisdiction upon finding, without abuse of discretion,* that the forum was not a convenient one within the scope of the non-statutory doctrine commonly, though not too accurately, labeled *forum non conveniens.*

"It would serve no useful purpose to review in detail the reasoning or the authorities upon which the District Court ruled the doctrine applicable in such cases as this, or therefore the further groundings upon which it proceeded in holding the forum inconvenient. *For the view has prevailed without qualification during the life of § 12, thirty-four years, that the choice of venues expressly given to the plaintiff is not to be qualified by any power of a court having venue under any of the section's alternatives to decline to exercise the jurisdiction conferred.* None of the decisions on which the District Court relied suggested, much less decided, that such a power exists. This therefore is a case of first impression, seeking departure from long-established practice. Moreover, the analogies drawn from other types of cases in which the doctrine has been applied cannot survive in the face of the section's explicit terms and the patent in-

43 United States v. National City Lines, 1947, D.C.Cal., 7 F.R.D. 393; United States v. National City Lines, 1947, D.C. Cal., 7 F.R.D. 456.

44 28 U.S.C.A. § 1404(a).

tent of Congress in enacting it."[45] (Emphasis added.)

The sufficiency of the facts, therefore, not having been determined by the Supreme Court, their revaluation is before me. On such revaluation, I conclude that the motion to transfer should be granted.[46]

---

[45] United States v. National City Lines, Inc., 1948, 334 U.S. 573, 575–578, 68 S.Ct. 1169, 1170.

[46] After the foregoing opinion had been completed, I received a copy of the opinion of Judges Gunnar H. Nordbye and Matthew M. Joyce, of the District of Minnesota, in eight companion cases—Hayes v. Chicago, Rock Island & Pacific R. R. Co. rendered on September 25, 1948, 79 F.Supp. 821. In these actions, which arose under the Federal Employers' Liability Act, the defendant moved to change venue, for the convenience of parties and witnesses, under Section 1404(a), 28 U.S.C.A. In granting the motion, the two judges reached the same conclusion as I do on two points: (1) that the transfer provision applies to *all* civil cases, including those which—like the Federal Employer's Liability cases—are brought under a special venue statute, and (2) that it may be invoked in pending cases. In Nunn v. Chicago, etc., Ry. Co., D.C.N.Y., 80 F.Supp. 745 Judge Kaufman, of the Southern District of New York, rendered an opinion on November 9, 1948, expressing similar views as to the applicability of the section to cases arising under the Federal Employers' Liability Act. Reference is made to it, so that all known decisions on the subject be called to the attention of the Bar.