**UNITED STATES of America**

v.

**SWIFT & COMPANY, Armour & Company, Wilson & Co., Inc., and the Cudahy Packing Company, et al., Defendants.**

**No. 37623.**

United States District Court
District of Columbia.

Jan. 9, 1958.

Harry N. Burgess, Alfred Karsted, and George Avery, Antitrust Div., Dept. of Justice, Washington, D. C., for United States.

Snyder, Chadwell, Faberburg & Keck, Chicago, Ill., by John T. Chadwell and Theodore A. Groenke, Chicago, Ill., and

Arthur C. O'Meara, Chicago, Ill., and Earl G. Spiker, Washington, D. C., for Swift & Co., Swift & Co. Inc., and Derby Foods, Inc.

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., by E. Houston Harsha, Chicago, Ill., Perry S. Patterson, Washington, D. C., for Armour and Co.

McDermott, Will & Emery, Chicago, Ill., by Walker Smith, Chicago, Ill., Hamilton & Hamilton, Washington, D. C., by William B. Jones, Washington, D. C., for Cudahy Packing Co.

McLAUGHLIN, District Judge.

This is a joint motion of defendants Swift and Armour to transfer the suit to the United States District Court for the Northern District of Illinois, Eastern Division.

The suit is an antitrust action by the United States against defendants Swift, Armour and others. It was filed in this court on February 27, 1920. On the same date the defendants filed answers denying unlawful acts, but also on the same date agreed to the entry of a consent decree, and said consent decree was thereupon filed on February 27, 1920. Thus, the filing of the Government's complaint, the defendants' answer and the consent decree occurred simultaneously on February 27, 1920. There was no trial. By the terms of this consent decree, defendants agreed not to engage in certain types of business activities in connection with the operation of their packing companies.

On August 10, 1929, Swift and Armour filed petitions for certain modifications of the consent decree, said petitions being supplanted by amended petitions filed on April 2, 1930. On January 31, 1931, after a lengthy trial, Judge Jennings Bailey of this court entered an order granting, in part, the defendants motion for modification of the terms of the consent decree of 1920. The Supreme Court of the United States, on May 2, 1932, reversed the judgment of modification of the decree. United States v. Swift, 286 U.S. 106, 52 S.Ct. 460, 76 L. Ed. 999.

In the opinion reversing Judge Bailey's order of modification of the 1920 decree the Supreme Court, speaking through Justice Cardozo, said (286 U.S. at page 119, 52 S.Ct. at page 464):

"We are asking ourselves whether anything has happened that will justify us now in changing a decree. The injunction, whether right or wrong, is not subject to impeachment in its application to the conditions that existed at its making. * * * Life is never static, and the passing of a decade has brought changes to the grocery business as it has to every other. The inquiry for us is whether the changes are so important that dangers, once substantial, have become attenuated to a shadow. * * * Nothing less than a clear showing of grievous wrong evoked by new and unforeseen conditions should lead us to change what was decreed after years of litigation with the consent of all concerned."

Since May 2, 1932, the consent decree of February 27, 1920 has remained unmodified, and so, also, has the decision of the Supreme Court announcing the controlling criterion to be employed in determining applications for modifications of said decree.

In November and December 1956, defendants Swift, Armour and Cudahy filed motions and petitions for modifications of the consent decree. On September 9, 1957, the Government filed a motion for summary judgment. On the same date defendants Swift and Armour filed the joint motion to transfer, referred to above.

This suit having been referred to this judge of this court in October, 1957 under special assignment to hear all motions and other proceedings therein, oral arguments on the joint motion of defendants Swift and Armour to transfer this case to the District Court for the Northern District of Illinois, Eastern Division, were fully presented by counsel for the movants, Swift and Armour, and for the respondent the Government.

554

The joint motion to transfer is brought under Title 28, Section 1404(a) United States Code, which provides as follows:

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

The determination of the motion to transfer depends on two issues. First, does the court have power under Section 1404(a) to transfer this action and Second, if the court has that power should it exercise its discretion in favor of such transfer.

The movants' basis for assertion of the possession of power by the court to order transfer rests upon the terms of Section 1404(a) above quoted. Reliance is placed on the grant of power to the court in the words of the statute to transfer "any civil case" to another court for the reasons set forth in the statute as grounds therefor.

Respondent makes the following concessions as to the power of transfer granted the court by the statute.

1. The original 1920 complaint could have been filed in Northern District of Illinois, Eastern Division.

2. Section 1404(a) applies to antitrust cases.

3. Section 1404(a) applies to cases which were filed and were pending prior to passage of that statute, but which had not been reduced to judgment.

4. Were this an original action in which the only procedural step that had been taken was the filing of a complaint by the Government, the defendants might properly seek to invoke Section 1404(a) and upon a proper showing this court would have discretion to transfer this case to Chicago, or to any other forum which they might establish as a more convenient one.

Respondent further concedes that had the present suit been institutd as of the date of the filing of the motion to transfer it would have interposed no objection to the transfer sought by the movants. But respondent contends that this is not a motion to transfer filed in a civil action which this court has power under Section 1404(a) to transfer, but rather is a motion to transfer filed after a final judgment had been entered, and, that at that time, there existed no pending case to which said motion was applicable, or over which this court had jurisdiction to enter an order of transfer under said statute; that respondent is seeking by motion to secure an order of this court empowering another court to modify said final judgment; that no other court possesses power to modify a decree of this court; that respondent is in fact seeking modification of said final order under the pertinent terms and provisions of Rule 60(b) of the Federal Rules of Civil Procedure, 28 U.S.C.;[1] that said rule vests solely in the court which entered the final order the power to modify such order and that a transfer of a civil case, including a final order therein, to another court for the purpose of seeking modification of said final order in the transferee court would have the effect of destroying Rule 60(b).

The determination of the first issue rests, therefore, on the narrow question as to whether the power to transfer possessed by courts under Section 1404(a), extends to the transfer of a civil action in which a final judgment has been entered. This narrow question is further affected by the presence in the final judgment of the following provision as set forth in Paragraph 18 of the consent decree of 1920:

" * * * that jurisdiction of this cause be, and is hereby, retained by this court for the purpose of taking

---

1. "On motion and upon such terms as are just the court, may relieve a party * * * from a final judgment * * * (for) any other reason justifying relief from the operation of the judgment."

such other action or adding at the foot of this decree such other relief, if any, as may become necessary or appropriate for the carrying out and enforcement of this decree and for the purpose of entertaining at any time thereafter any applications which the parties may make with respect to this decree."

No decided case has been submitted to the court by counsel on either side involving the question of the applicability of Section 1404(a) to a petition or motion for transfer of a case in which a judgment has been previously entered, and all counsel state that in their opinion none exists. The court's research, likewise, has not served to disclose such a case. In the circumstances, the question of the applicability of the statute to the facts involved herein must be determined by a construction of the statute in the light of those facts.

 Counsel for the Government contend that under the strict statutory construction rule the court is required to construe the words of the statute "any civil action" to read, in effect, "any civil action in which a judgment has not been entered" and as basis for said contention assert that the entry of a judgment terminates or ends a civil action and causes said action, thereupon, to become nonexistent. Government counsel further contend that counsel for the movants have failed to establish, by a showing of legislative intent, that the words "any civil action" in the statute include a civil action in the posture of the case at bar. The court has not been persuaded that the words in question are themselves ambiguous or that ambiguity is present in the entire statute so as to make necessary or, indeed, pertinent, any consideration of legislative intent in connection with the meaning of said words. "The short answer is that there is no need to refer to the legislative history where statutory language is clear." Ex parte Collett, 1948, 337 U.S. 55, 60, 69 S. Ct. 944, 947, 93 L.Ed. 1207 and cases cited. Should it be felt, however, that reason exists for inquiry into legislative

intent to ascertain what is covered by the term "any civil action" in Section 1404(a), despite this court's belief that no such reason does exist, adequate judicial support is found in the following pronouncements that the intendment of the Congress in the enactment of Section 1404(a) was to prescribe for the transfer by one court to another of any case in the transferor court without qualification or exception.

The following decisions construing Section 1404(a) are unanimous in their conclusion that the statute by clear intendment embraces within its scope all civil actions without exception:

United States v. National City Lines, D.C.Cal.1948, 80 F.Supp. 734, 741–742. The court states:

"It is a fundamental rule of statutory interpretation that a statute general in its language is to be given general application. No exceptions will be read into a statute of such character. The legislative history of the revision of this portion of the Judicial Code evidences an intention to follow the accepted pattern in this respect. This also appears from the use of the adjective 'any', which is defined as follows:

" '1. One indifferently out of a number; one (or, as pl., some) indiscriminately of whatever kind; specif; (a) Indicating a person, thing, event, etc., as not a particular or determinate individual of the given category but whichever one chance may select; this, that, or the other; one or another; * *, *
(b) Indicating a person, thing, etc., as one selected without restriction or limitation of choice, with the implication that every one is open to selection without exceptions; * *
(c) Indicating one person, thing, etc., taken with indifference to quality; one or some, however excellent or poor (more often the latter); as, any plan would be better than no plan.'

" 'Any' covers everything in a category or class. Its use excludes ex-

ceptions unless they are specifically given. For its primary meaning is 'one indefinitely, or indifferently, out of a number.' And that the aim was to use the word in that sense is evident from the legislative history already given. This is also apparent from the fact that whenever, in this revision, the Congress intended either the whole revision or a specific provision in it, *not* to apply, they made specific exceptions from the generic phraseology." (Emphasis in opinion.)

United States v. E. I. du Pont de Nemours & Co., D.C.D.C.1949, 83 F.Supp. 233, 235.

"This provision (Section 1404(a)) introduced a new principle into Federal judicial procedure. It is a comprehensive, general statute applicable to all civil actions without exception. * * * obviously the Congress intended that it (Section 1404(a)) should be comprehensive and all exclusive in its scope (Citing United States v. National City Lines, Supra) * * *

" * * * As stated above, it (Section 1404(a)) is comprehensive in its nature and covers all civil action, irrespective of the nature of the parties or of the subject matter."

The above cited cases are not on all fours with the instant case from a factual standpoint, in that neither involves proceedings to transfer under Section 1404(a) in an action in which a judgment had been entered prior to said transfer proceedings.

The court has studied the Government's contention that the action was brought to a conclusion by the entry of judgment in 1920 and that thereafter it was no longer an existing or pending case and that for that reason it is not a civil action within the terms of Section 1404(a), and consequently not subject to transfer by the operation of said statute. In making a determination regarding that contention of the Government the court has carefully considered the facts and circumstances surrounding the ac-

tion; its nature and character; its origination; the entry of the consent decree coincidentally with the filing of the complaint in 1920; the extensive trial before Judge Bailey in 1930 involving essentially the same type of situation presented immediately by the defendants' petition and motion for modification; the contents of Paragraph 18 of the 1920 decree, supra, and the words of Justice Cardozo above quoted from United States v. Swift, supra, and his further words found on page 114, of 286 U.S. on page 462 of 52 S.Ct. of that opinion "A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need". The circumstances of the entry of judgment prior to the filing of motion for transfer in this case does not lessen, in the court's opinion, the positive force of the decisions of the courts, above quoted, that the words "any civil action" in the statute are definite and certain in their meaning and unlimited and unaffected in any way in their application. In reliance on these decisions and in the light of the foregoing facts and circumstances, the court is of the opinion that the Government's contention that the case was terminated or put an end to by the entry of the 1920 decree is unrealistic, and, so, can only conclude that the case is a pending case, and that it comes within the purview of the transfer statute. Consequently the court holds that it possesses the power to order the transfer under Title 28, Section 1404(a) United States Code.

Nor, as the court interprets the statute, should any greater weight attach to the Government's contention, addressed to the question of the court's power to transfer and also to the issue of public interest, that the power to modify the decree is a residual power possessed only by this court as the court which entered the decree. The grant of power in the statute to this court to transfer any civil action, constitutes, in the court's opinion, a correlative grant of power to the transferee court over the transferred case in all its aspect. Neither does the

court feel impelled to alter that view on the ground, asserted by the Government, that movants are relying on Rule 60(b) of the Federal Rules of Civil Procedure, and that therefore the application for transfer is in reality an effort to transfer only a motion and not a civil action; that the transfer would have the effect of destroying said Rule 60(b) which the court obviously is not empowered to destroy, and, thus that the transfer would not be in the interest of justice. The application upon which the court is required to rule is, in the court's opinion, one for transfer of the entire case, including all unresolved motions and proceedings present in the case.

Arriving at the issue as to whether its discretion should be exercised in favor of transfer, the court is directed by the provisions of the pertinent statute to consider two elements; namely, first the convenience of the parties and witnesses and second the interest of justice, and to base its resolution of this issue upon said provisions. In resolving this issue it is incumbent on the court to consider fully all factors that bear upon the legal, factual and practical phases of the situation.

In approaching the questions involved in this issue the court has taken heed of the following circumstances relied on by the defendants, as movants herein, in support of their application for transfer: the general nature and character of the litigation and the purpose on the part of the Government in the initiation of the action; the fact that the decree was entered into in the year 1920 by consent of the parties; that all original pleadings of the parties were filed simultaneously with the consent decree and that no trial was involved; that the decree exists today in its original form, effort on defendants' part to modify it having been unsuccessful as a result of the Supreme Court's reversal in 1932 of this court's order of partial modification; that the defendant corporations, the moving parties herein, are domiciled in the federal judicial district to which they seek to have the case transferred; that

their headquarters and their books and records are located in said district; that their officers and employes who will be called upon to testify are likewise located there; that defendants' counsel maintain their law offices in the City of Chicago in said district; that large savings of expense will accrue to movants through transfer of the action to Chicago; that in a substantial number of instances in recent years the Government has instituted antitrust actions in Chicago and at locations west of Chicago against defendants domiciled in the respective federal court jurisdictions in which the suits were filed, and that in a number of other instances antitrust suits against defendants domiciled in Chicago, instituted elsewhere, have been transferred pursuant to Section 1404(a) to the federal court in Chicago and that from the standpoint of convenience, the Government is equipped to prosecute antitrust cases against Chicago domiciled defendants in the federal court in Chicago, the court to which transfer is sought herein.

The court has given equally full attention and study to the following considerations stressed by the Government, as the respondent, in support of its vigorous contention that the defendants' prayer for transfer should be denied: that the Government's law office charged with the prosecution of this case is located in Washington, together with the accumulation of records pertinent to the litigation over the years since 1920; that Government agencies related to defendants' various business activities are situated in Washington; that the claims of movants Swift and Armour to the effect that their respective savings of expense in the event of trial in Chicago in the amounts respectively, of $150,000 and $100,000 show an unexplained disparity of 50% and that a total saving of $250,000 to movants should not, in any event, be considered by the court as a factor to be taken into account in connection with transfer in view of the large admitted assets of the movants and their consequent ability to bear the additional expense incident to trial in Washington;

that savings to the Government resulting from denial of transfer will be in excess of $40,000; that defendants raised no objection at the time of the filing of the action over the exercise of control thereof by this court, but on the contrary consented thereto and to the entry of a decree in the case; that defendants' application for modification in 1930 and the trial incident thereto, constituted further evidence of lack of objection on defendants' part to said exercise of control by this court over this litigation; that the case, as an ended or concluded case by virtue of the entry of the final decree, is not a transferrable case within the contemplation of the transfer statute; that if, arguendo, it is a transferrable case within the statute's purview, the court should not exercise its discretion in favor of transfer because it has not been demonstrated that it would be for the convenience of parties and witnesses that transfer should be ordered; that from the standpoint of the interest of justice, it would be wholly improper to remove this case to Chicago, because said removal would be against the interest of justice since it would constitute an approval by the court of the removal, in actuality, of a post judgment motion which constitutes only a collateral part of a case, under the guise of removal of a case within the terms of the removal statute and would be equally offensive to the interest of justice since it would result, in effect, in approving the practice, nowhere sanctioned, of allowing one court to take jurisdiction over a decree of another court for purposes of potential modification thereof. The latter contentions have already been discussed herein in connection with the question of the court's power to transfer, and the court's conclusions therein announced seem applicable, as well to the issue of the interest of justice in connection with the court's exercise of discretion.

The court feels a peculiar sense of obligation to regard the application to transfer, within the framework of the controlling statute, in its broad aspects rather than narrowly. This action is one of great scope and magnitude which, if tried, will embrace inquiry into national, if not, indeed, international trends, transactions and developments, present, past and potential in the food industry and allied industries, including the assembling, unfoldment and analysis of a vast array of factual material bearing on production, processing, transportation and marketing of food products. The case has been aptly characterized by counsel for the Government as one of the major antitrust cases in the federal courts. The elaborate showings by way of affidavits, the extensive briefs of counsel and the lengthy and exhaustive oral arguments which have been presented in connection with this preliminary motion indicate the breadth of the proceedings to follow to conclusion in the case.

Regarding particularly the element of convenience of parties and witnesses, it seems obvious that the case should be accorded necessary judicial attention in the forum best calculated to permit the development of the record with the least possible difficulty and with the greatest possible convenience. It is clear from the representations made and relied upon by the respective parties that some inconvenience to parties and to witnesses will follow whether the case be transferred or retained in this jurisdiction. The Government will suffer some degree of inconvenience if the suit is transferred and the defendants, likewise, will be inconvenienced if the application for transfer is denied. Extensive showings have been presented to the court by the parties setting forth in detail the results which it is claimed will follow, from the standpoint of convenience, in the event, respectively, of transfer or denial thereof. In the circumstances the court is confronted with the duty and responsibility of balancing the inconveniences of the respective parties and witnesses and of arriving at a determination of the issue of convenience of parties and witnesses posed by the facts as related to the statute. The court has undertaken to discharge that duty and responsibility and in doing so has taken into account

and carefully considered all the showings of the parties and the applicable arguments of counsel. On the basis thereof the court finds that the showings, on balance, preponderantly establish that it would more fully serve the convenience of parties and witnesses if the case were transferred for all purposes to the District Court of the United States for the District of Illinois, Eastern Division, than if it were retained in the District Court of the United States for the District of Columbia. The court finds that such transfer would effect savings of time of travel of witnesses and simplification of production of evidence, both as to records and as to verbal testimony. The court further finds that substantial savings of expense, over all, would result from trial of the action in the Chicago jurisdiction rather than in the Washington jurisdiction. The court finds that the showing of substantial savings of expense to the movants, defendants Swift and Armour, which will result from trial in Chicago rather than in Washington is offset only in relatively small degree by the showing of savings to the Government resulting from trial in Washington, and that the net, overall savings, resulting from transfer is an element in favor of transfer which the court should take into account along with all the factors in connection with the issue of convenience of parties and witnesses.

As to the issue of the interest of justice involved in the transfer application, the Government, while insisting that the court lacks power to transfer this action, takes the position, arguendo, that if such power is possessed by the court, it would not be in the interest of justice to exercise it herein. The court, in the course of its discussion of the issue of the power of the court to order transfer, has expressed certain views on the subject of interest of justice which appear pertinent at this point, and these views need not be restated here.

█ The element of proper forum for judicial inquiry and determination and the element of the expedition of the necessary judicial processes are of prime importance, in the court's judgment, in connection with the issue of the interest of justice. The initiation of many antitrust cases by the Government in the Chicago federal court jurisdiction plus the removal of many such suits involving defendants domiciled in Chicago from jurisdictions where said suits have been filed, to Chicago as the home judicial jurisdiction of the defendants, has persuasive weight with the court in favor of transfer in the interest of justice in the instant action. Another consideration which the court regards as impressive, in connection with the determination of the issue of the interest of justice, under the statute herein involved, is the fact that Chicago, the seat of the District Court of the United States for the District of Illinois, Eastern Division, is the center of the meat packing industry of the United States and the focal point of defendants' administrative operations. It appears to the court that is the logical forum in which to litigate the issues involved in this action. While it is true that the section within the Department of Justice which has handled all parts of this litigation to date has its offices, its staff and its records relating to the case, in Washington, it is equally true that the section within the Government department handling antitrust cases in Chicago has its offices in that city.

Important in connection with the interest of justice involving the element of expedition of the judicial processes and determination resulting therefrom, in the court's opinion, is the factor of the delay necessarily incident to the highly congested state of the docket in this judicial district. The crowded condition of the calendar and the pressure of continuous trials and other judicial proceedings in this court because of the presence of Government agencies in Washington and of the many extraordinary statutory jurisdictions of this court are too well known to require elaboration—see Judge Holtzoff's opinion ordering removal of the antitrust action in United States v.

E. I. du Pont, D.C.1949, 83 F.Supp. 233 under Section 1404(a) from the District of Columbia to the Delaware District, the home jurisdiction of the defendants.

■ The fact that a motion for modification of the 1920 decree was filed by defendants in 1930 and proceeded to conclusion before one of the judges of this court in 1931, without effort on the part of defendants to transfer the case to another judicial district, does not, in the circumstances, in the opinion of the court, militate against the defendants as movants in the present proceeding. Title 28, Section 1404(a) was not in existence at the time of the filing of the motion for modification in 1930 and did not come into existence until 18 years thereafter, so that recourse to a proceeding of the character of the instant motion to transfer was not available to defendants at that time. Furthermore, the fact that the 1930 motion for modification was tried at length to final order before one of the judges of this court in 1931 gives to the present motion no type of fixation in this court. The judge who heard and determined the 1930–31 motion has retired and no judge who is at present an active member of this court was a member thereof in 1930 or in 1931 at the time of the modification. Thus the members of this court have no more familiarity with this case than do the members of the United States District Court in Illinois. Consequently the District Court of the United States for the District of Illinois, Eastern Division, will approach consideration of this case in exactly the same way in which it would be approached by the District Court of the United States for the District of Columbia if it were retained in this jurisdiction.

■ The court has considered the motion to transfer in advance of the completion of the issues on the motion for summary judgment for the reason, as indicated by the court during the argument of the motion to transfer, that the summary judgment in a case of this nature and extent will involve time and effort, in all likelihood, greater than that involved in the majority of trials. Furthermore the court has considered the transfer motion in advance of the motion for summary judgment in order to eliminate the situation that would result, in the event of transfer, of transferring a case in which the transferring court had ruled on an important element of the case which the transferee court should be allowed to be free to rule upon itself.

Premises considered, the court finds that it is established that, for the convenience of parties and witnesses, in the interest of justice, this civil action should be transferred to the United States District Court for the Northern District of Illinois, Eastern Division. Therefore the motion of defendants Swift and Armour to transfer this case is sustained.

Counsel for the defendants Swift and Armour will prepare order of transfer in accordance with this opinion of the court. Counsel for Cudahy has not joined in this motion but has expressed agreement to transfer if ordered by the court.